1816.

Dey
v.
Dunham.

[ *182 ]

## *Dey *against* Dunham.

Where a deed, absolute on the face of it, is recorded *as a deed*, and afterwards the grantee executes a *defeasance*, which is not registered or recorded, the defeasance connected with the first deed is considered as a *mortgage*, and must be registered as such, to give it priority over a subsequent deed to a *bona fide* purchaser. The record of the absolute deed, as such, is no *notice* to a subsequent purchaser.

Where a debtor conveys all his estate, real and personal, in *trust* for all his creditors, such *trustee* is considered as a *bona fide* purchaser. Though there is a *schedule* annexed to the assignment in trust, which mentions that the title to the land was in the defendant, (the grantee in the original deed,) and that he held it as collateral security to pay certain notes, this is not a sufficient *notice* to the trustee.

It must be such a *notice* as, with attending circumstances, will affect the subsequent purchaser with actual fraud. A *notice* enough merely to put the party on inquiry, is not sufficient to break in upon the registry act.

This Court will order a defendant to account for moneys overpaid, beyond the legal interest, in pursuance of a usurious contract. The defendant cannot, at the hearing, avail himself of the *limitation* in the act against *usury*, unless the same has been pleaded or insisted on in his answer.

Where the defendant advanced his notes to the plaintiff for his notes for the same sums, payable at or near the same periods, for which exchange the defendant received a *commission of two and a half* per cent. on the amount, and the notes when they became due were renewed, and new notes given in exchange, and this renewal and exchange were repeated many times, and the defendant, on each renewal and exchange, received a *commission* of *two and a half* per cent., but which was less than the lawful interest on the amount of the notes for each time they had to run; this was held not to be *usury*, but a compensation only for a loan of credit and risk. But if the defendant had taken lawful interest for the time the notes had to run, and had exacted the *commission* in addition, it would have been *usury*.

The recitals in a *decree* should not be argumentative, but state merely the conclusions of law and fact. Where a deed is set aside as constructively fraudulent, it is usual to direct a release and reconveyance by the party claiming under the deed, with a covenant against his own acts.

A deed charged in the bill, and admitted in the answer, may be read at the hearing, without having been made an exhibit before the master.

*September* 31st, and *October* 11th.

THE bill stated, that *M. & W. Ward*, booksellers, and partners, being seised of fifty lots of land in the 9th ward

of the city of *New-York*, on the 27th of *January*, 1810, conveyed the same to the defendant, by an *absolute* deed, but *which was intended only as security for some temporary purpose, or if for security for money due, it was for money due on a usurious contract; and the temporary purpose (if any) for which the deed was given, was accomplished before the 27th of *July*, 1810, when the deed remained uncancelled in the defendant's hands; and, on that day, a *writing* was executed under the hands and seals of *M. Ward* and the defendant, reciting that *M. & W. Ward* were indebted to the defendant, in the sum of 10,000 dollars, on three notes, dated the 24th, 25th and 26th *July*, 1810, payable six months after date; and that they, *M. & W. Ward*, had deposited with the defendant three notes, made by *Robert Bache & Co.*, for 1,408 dollars 41 cents each, payable in 9, 11, and 13 months, to *M. & W. Ward*, and endorsed by them; and declaring, that if the said notes of *M. & W. Ward*, for 10,000 dollars, should be regularly paid, the conveyance for the 50 lots should be reconveyed, and the notes of *Bache & Co.* be given up; but if the notes should not be paid, then the notes of *Bache & Co.* should remain as security, and the defendant might sell the lots and collect the notes of *Bache & Co.* to obtain payment of the sum due the defendant. That the deed for the 50 lots was not registered; that the writing, declaring the 50 lots to be security only, was never registered or recorded, and therefore, under the act concerning mortgages, was void, even as a mortgage.

That *M. & W. Ward*, on the 17th of *June*, 1811, gave to the defendant two notes, one dated the 25th of *May*, 1811, for 3,333 dollars and 33 cents, payable in 60 days, and the other dated the 12th of *June*, 1811, for the same sum, payable in 90 days; and on the 25th of *June*, they gave to the defendant a third note for the like sum, payable in 30 days, which notes were made and received in lieu of the three notes first mentioned, which are yet retained by the defendant; that on the 17th of *June*, 1811, when the two *notes were given, the defendant, by *B. Edgar*, his agent, gave *M. & W. Ward* a receipt, admitting that they were given on account of the three first notes, and when the third note, of the 25th of *June*, was given, the same agent endorsed a receipt for it on the other receipt. That when the three last notes were given, *M. & W. Ward* paid up all the interest on the first notes, and a large sum besides, for usury, beyond the legal interest; that the three last-mentioned notes were regularly paid as they became due, and are now in possession of the plaintiff; that if the deed for the 50

1816.

DEY
v.
DUNHAM.

lots could not have been of any force as security, the same was wholly discharged by the payment of the last notes.

That on the 11th of *May*, 1812, *M. & W. Ward* assigned to the plaintiff all their estate, real and personal, in trust, for the benefit of their creditors, part of which real estate was the 50 lots mentioned; and by another deed, dated the 16th of *November*, 1812, *M. & W. Ward* confirmed to the plaintiff the 50 lots, in *trust*, &c. That the plaintiff, considering the deed to the defendant as discharged by the payment of the notes, on the 19th of *November*, 1812, gave notice to the defendant of the assignment to the plaintiff, and requested the defendant to give up the deed for the lots, and the three first notes, to be cancelled. That between the 27th of *January*, 1810, and the date of the assignment to the plaintiffs, *M. & W. Ward* had various dealings with the defendant, by exchanging notes, the defendant giving to them his notes for different sums, at different periods of payment, and receiving, at the same time, their notes payable at the same or different periods, upon which transactions, under the name of *commissions*, the defendant extorted from them above 200 dollars for usury, over and above the legal interest, and for which the defendant had become accountable to *M. & W. Ward*, and to the plaintiff,

[ * 185 ]

as their assignee. The plaintiff *prayed that the defendant might be decreed to deliver up the deed of the 27th of *January*, 1810, and to release to the plaintiff all his interest in the lots of land, and also to account for the sums received by him for usury.

The defendant, in his *answer*, admitted the facts stated in the bill, as to giving the three notes by *M. & W. Ward*, on the 27th of *January*, 1810, and the deed for the 50 lots, which was absolute in terms, but intended only as security, but denied that the deed was given on any usurious or illegal contract. He stated, that in *February*, 1810, he reconveyed two of the lots to *M. & W. Ward*, who sold them for 400 dollars, which was received by the defendant; and he denied that the purposes of the deed were yet fulfilled. The defendant further said, that on the 25th of *July*, 1810, *M. & W. Ward* applied to him to renew the first notes, and that he did so, by giving his three notes for the same sums as the notes made in *January*, dated the 26th, 27th, and 28th of *July*, 1810, at six months, and receiving three notes of *M. & W. Ward*, dated the 24th, 25th, and 26th of *July*, two for 3,000 dollars each, and one for 4,000 dollars, payable six months after dates; and they left the deed for the 50 lots in the defendant's hands, and deposited with him two notes of *Bache & Co.*, amounting to 2,816 dollars and 83 cents; that

the notes of *M. & W. Ward* were dated first, to enable the defendant to collect them, before his own fell due, or to sell the lots of land; that *M. & W. Ward* got the notes of the defendant, last mentioned, discounted, and, with the money so raised, took up the notes of the 27th *January*, 1810. The defendant admitted the writing by way of defeasance; and said, that the three last mentioned notes of *M. & W. Ward* were not paid, they having failed before they became due, and that the notes were now in possession of the defendant. He denied all *usurious* transactions with *M. & W. Ward*, or receiving from them interest beyond seven per cent. *for loans. He said that the deed of the 27th of *January*, 1810, though not registered as a mortgage, was recorded as a deed, on the day of its date; but the writing given as a defeasance was never registered or recorded. That in *July*, 1810, *M. Ward* proposed to the defendant to raise 10,000 dollars for him on his notes, and prevent a sale of the lots, and the defendant issued notes for that purpose. The defendant denied that *M. & W. Ward* gave to him, on the 17th of *June*, 1811, the new notes mentioned in the receipt signed by *Edgar*; but said that they gave him three notes, one for 3,333 dollars and 33 cents, dated the 25th of *May*, 1811, payable in 60 days, for which they received the note of the defendant for the same sum, dated the 28th of *May*, at 60 days; and one for the same amount, dated *June* 12th, at 90 days, for which they received his note for the same sum, dated the 15th of *June*; and one for the same amount, dated the 24th *June*, at 30 days, to meet a note of the defendant to *M. & W. Ward*, payable in five months from *February* 28th, 1811; which three notes the defendant believed were the three notes referred to in the bill; and he denied that he received any notes of *M. & W. Ward*, dated the 17th and 25th of *June*, as charged. That when the proposal was made to raise money on the notes of the defendant, *M. Ward* agreed that the notes of *M. & W. Ward*, given in *July*, 1810, should be retained by the defendant, until the debt was paid, because they corresponded with the notes described in the defeasance, and the deed and defeasance were also to remain in force, until the debt was paid. He denied that their notes of the 25th of *May*, and 12th and 24th of *June*, were given or received in lieu of the notes of *July*, 1810.

He admitted, that about the time *M. & W. Ward* made their notes of the 25th of *May*, and 12th of *June*, *Edgar*, as agent for him, gave a receipt for the same, and also a receipt for the note of the 24th of *June*; and that when they gave those notes, they paid up the *interest* on their *notes of *July*, 1810, but no usury; and that they paid the

1816.

Dey
v.
Dunham.

[ * 186 ]

[ * 187 ]

149

1816.

Dey
v.
Dunham.

notes of *May* and *June*, 1810, to him. He admitted the assignment to the plaintiff in trust, but denied that the plaintiff did not know the real situation of the defendant's claims; that he received the notice from the plaintiff of the 18th of *November*, 1812, but knew nothing of the deed of the 18th of *November*. He admitted that between the 27th of *January*, 1810, and the assignment, *M. & W. Ward* had various dealings with him by way of exchanging notes; but he denied that he extorted any sum above lawful interest, under the name of commissions; that he, however, received from them, by agreement, and in the course of trade, commissions from a half, to two and a half per cent., not as usury, but as an allowed mercantile compensation.

*M. Ward* (who had released all his interest) was examined as a witness for the plaintiff, and proved the facts as stated in the bill relative to giving and renewing the notes. He stated that the notes of *M. & W. Ward* were given for notes of the defendant for the like sums, in exchange, the former being dated earlier, so that they might become due before those of the defendant; that they agreed to pay, and did pay, the defendant two and a half per cent. commissions for the exchange of the notes, and that on the further exchanging of notes between them, the like commission was paid, or included in the amount of their notes, or discounted from the notes of the defendant; that the business of exchanging notes as they became due continued for some time, and, on every occasion, the commission was paid to the defendant. That the commissions paid by *M. & W. Ward* to the defendant on the various exchanges of notes, until the time of their failure, was 1,200 dollars; but that for all exchanges, &c. other than on the notes above mentioned, the sums paid for loans of defendant's notes, but not for money lent, amounted to above 7,000 dollars.

[ * 188 ]

*N. B. Edgar*, a witness, stated also the agreement as to the two and a half per cent. commission for advancing notes, &c. That it was agreed, that, when the first notes were taken up, the deed, &c. was to be delivered up; but *M. & W. Ward* having, afterwards, borrowed other notes of the defendant to take up their notes, it was further agreed that the deed should continue as collateral security for the new notes; and on the renewal of the notes the defendant had the same commission, as on advancing the original notes. That after the notes of *M. & W. Ward* fell due in *January*, 1811, it was agreed, that those notes should remain in the hands of the defendant until after the sale of the lots, or until all the subsequent notes should be paid;

that the last notes were not to be in lieu of the three first notes.

*Riggs*, and *S. Jones, jun.*, for the plaintiff.

*T. A. Emmet*, for the defendant.

At the hearing, the counsel for the plaintiff offered to read the deed of assignment to the plaintiff, in *trust*, without its being made an exhibit, or being proved before the examiner, on the ground that it was admitted in the defendant's answer.

The defendant's counsel objected, that the deed had not been made an exhibit, nor had any notice been given of an intention to produce or read it.

THE CHANCELLOR.    A deed charged in the bill, and admitted in the answer, may be read at the hearing, without being an exhibit before the examiner, and without a previous notice or rule to produce and prove it at the hearing.    The case is not within the reason of the general rule of practice on the subject, and there can be no surprise on the defendant.

*THE CHANCELLOR.    The first and principal question is, whether the assignment to the plaintiffs will carry the title to the 50 lots, in preference to the prior deed to the defendant.

The deed to the defendant of the 50 lots was, on its face, an absolute deed, in fee, with full covenants, and it was acknowledged and recorded, as a deed, on the day of its date. It is admitted, however, that the deed was taken in the first instance as a security for the payment of three notes, to the amount of 10,000 dollars, payable in six months, and bearing date about the same time with the deed, in *January*, 1810.    Afterwards, on the 27th of *July*, 1810, and about the time that the notes became due, other notes were given in lieu of them, and an agreement under seal executed by the defendant, admitting that the deed of the 50 lots was only held as a security, and that if the substituted notes were paid, the deed was to be given up, and the lots reconveyed.    This agreement, operating as a defeasance or explanation of the design of the deed, was never registered, yet it is to be considered in connection with the deed, and relates back to its date, so as to render the deed, from its commencement, what it was intended to be by the parties, a mere mortgage, securing the payment of the notes.

As a mortgage, the deed and the subsequent agreement

151

DEY
v.
DUNHAM.

An absolute deed with a defeasance is a mortgage; and must be recorded as such to give it priority. The record of the deed, only, is no notice.

[ * 190 ]

A notice tnat is to break in on the registry act, must be such as, with the attending circumstances, will affect the subsequent purchaser with fraud.

A notice merely to put the party on inquiry is not sufficient for that purpose.

[ * 191 ]

ought to have been registered, to protect the land against the title of a subsequent *bona fide* purchaser. This is the language of the statute concerning the registry of mortgages; and recording the deed, *as a deed*, was of no avail in this case, for the plaintiff was not bound to search the record of *deeds*, in order to be protected against the operation of a *mortgage*.

The plaintiff is to be considered as a *bona fide* purchaser. A conveyance in trust to pay debts is a valid conveyance founded on a good consideration. (*Stephenson* v. *Hayward*, *Prec. in Ch.* 310.) Nor do I think that the plaintiff is chargeable with notice sufficient to postpone *the operation of his assignment in trust. All the notice in the case is contained in the schedule to the assignment, stating that *the title to the* 50 *lots is, in the name of the defendant, given as collateral security to pay certain notes.* The notice that is to break in upon the registry acts must be such as will, with the attending circumstances, affect the party with fraud; and here is certainly no fraudulent intention to be imputed to the plaintiff. The ground of the numerous decisions on this subject seems to be, the actual fraud of the party in taking a second conveyance with knowledge of the first, and with intent to defeat it. There may possibly be cases, as Lord *Hardwicke* observes in *Hine* v. *Dodd*, (2 *Atk.* 275.) in which the registry acts are set aside upon notice devested of fraud; but then the proof must be extremely clear. In this case, the notice arising from the schedule was lame and defective. There was no notice as to the amount of the notes, or how many, or when payable; whereas every registry of a mortgage must specify, with certainty, the mortgage money, and when payable. The plaintiff in this case might not have inferred from the schedule that the defendant held any thing more than a nominal title, and, perhaps, as a mere trustee upon some extinguished debt. It was not even said to be a subsisting debt. If notice that is to put a party upon inquiry be sufficient to break in upon the policy and the express provisions of the act, then, indeed, the conclusion would be different; but I do not apprehend that the decisions go that length. This would be too slight a foundation to act on in opposition to the statute. Here is no evidence that any possession was ever taken under the mortgage. There was nothing except the loose information in the schedule; and under such an equitable and meritorious assignment as this, I do not deem that sufficient to render the assignment fraudulent in the hands of the plaintiff. Nothing can be stronger than the language of Lord *Alvanley* in *Jolland* v. *Stainbridge*, (3 *Ves.* 478.) "The person," he *says, " who takes subsequently, must know exactly the sit-

uation of the prior deed, and have meant to defraud." All the cases appear to me to turn upon fraud resulting from the notice.

This is one of the last cases in which the doctrine of notice ought to be pressed with much strictness. The assignment was for a just and meritorious purpose, in which the defendant was included, and the defendant had taken an absolute deed, and recorded it as such, though he secretly intended it only for a mortgage, and he afterwards gave a separate defeasance. Lord *Talbot* said, (*Cas. temp. Talbot,* 89.) that this was not a proper practice, and ought to be discouraged. "To me," he observes, "it will always appear with the face of fraud, for the defeasance may be lost, and then an absolute conveyance is set up." Here the party did not even give a concurrent defeasance. He takes an absolute deed, and records it as an absolute deed, and left the agreement by which it was taken as a mortgage to rest only in secret confidence.

The only question remaining is, whether he is accountable for the commissions, as unlawful interest, which he received on the exchange of notes. There is no doubt that this Court will order a defendant to account for moneys overpaid in pursuance of a usurious contract. This was done in the case of *Bosanquet* v. *Dashwood.* (*Cas. temp. Talbot,* 37.) It is equally settled, that the defendant cannot avail himself of the time limited in the statute of usury, which defence his counsel suggested at the hearing; for the statute of limitations must either be pleaded or insisted on by the answer, to entitle the party to the benefit of it, though the Court will often, in cases of stale demands, take the time in the statute as a guide to its discretion. (*Prince* v. *Heylin,* 1 *Atk.* 493.)

Let us then see what is the charge, and what is the proof of usury, in this case.

*The bill charges, that between the 27th of *January,* 1810, and the date of the assignment to the plaintiff in *May,* 1812, the *Wards* had various dealings with the defendant by exchanging notes, the defendant giving to the *Wards* his notes for different sums at different periods, and, at the same time, receiving from the *Wards* their notes payable at the same or other periods, upon which transactions, under the name of commissions, the defendant extorted usury to 2,000 dollars and upwards, over and above lawful interest. In answer to this charge, the defendant says, that between that period the *Wards* had various dealings with him, by way of exchanging notes; but he denies that he "extorted any sum above lawful interest under the name of commissions," though he admits he received, by

*Marginal note:* A defendant will be ordered to account for moneys overpaid in pursuance of a usurious contract.

*Marginal note:* The limitation of the statute against usury must be pleaded or insisted on in the answer, otherwise the party cannot have the benefit of it, at the hearing.

[ * 192 ]

1816.

DEY
v.
DUNHAM.

agreement, and in the course of trade, of the *Wards*, commissions from a half, to two and a half per cent., and which were received, not as usury, but as a legal mercantile compensation.

The testimony of *M. Ward* was competent proof. By his release he had discharged himself of all interest in the cause. He certainly does not come within the case of *Winton* v. *Saidler*, (3 *Johns. Cas.* 185.) in which it was held, that a person is not a competent witness to impeach the validity of negotiable paper which he had signed. The validity of the notes is not now the question. They are not before the Court. They have been discharged, and the testimony only incidentally affects their posthumous reputation. In the case cited, and in that of *Walton* v. *Shelly*, the suit was directly on the note, and the witness was offered to impeach it, and defeat the recovery.

*Ward* proves, that in the exchange of notes in *January*, 1810, there was paid to the defendant, by agreement between him and the *Wards*, a commission of, at least, 250 dollars, for such exchange. That when the exchange of notes was repeated, in *July*, 1810, the witness paid, in behalf of the *Wards*, and the defendant received, 250 dollars, *at the least, as a commission for the exchange and renewal; and that the business of exchanging notes, upon the old notes falling due, continued for some time, and on every such occasion a commission was paid to the defendant; and that the amount of the commissions paid on the various exchanges and renewals of the notes, until the failure of the *Wards*, and the assignment to the plaintiff, was 1,200 dollars; but for all exchanges and renewals of notes, other than those above mentioned within the said period, the commissions paid thereon by the *Wards*, to the defendant, amounted to upwards of 7,000 dollars, all of which was paid for the loan of notes, and not for loans of money.

The testimony of *Edgar*, the defendant's witness, proves equally the receipt of the same commission on the exchange and renewal of the notes. But did the demand and receipt of the commissions amount to usury? The defendant gave his notes for a given sum, say 10,000 dollars, payable in six months, and took the notes of the *Wards* for the same sum, payable at the same time, and this operation was frequently repeated. This was not a cash advance. It was lending his credit or security to the *Wards*. They were enabled to raise money by discount on the notes of the defendant, as being of better credit in the market than their own; and if the defendant had not taken any commission for the transaction, he would have had nothing for his risk and trouble. If he had taken more than at the rate of seven

A *commission* of 21-2 per cent. taken on the renewal of notes [ * 193 ] advanced to another in exchange for his notes, for same sums, at or near the same periods of time is not *usury*.

But if lawful interest be taken for the notes, for the time, and the commission is exacted, in addition, it will be usury.

154

per cent. for the amount of his notes for the time they had to run, it would, probably, have been usury in disguise. It would then have come within the reach of the cases of *Kent* v. *Lowen*, (1 *Camp. N. P. Rep.* 177.) and of *Dunham* v. *Dey*, (13 *Johns. Rep.* 40.) But the two and a half per cent., in this case, was less than at the rate of lawful interest. It was but 5 per cent., and it appears to me to have been a lawful compensation for the loan of his risk and credit. If the defendant had taken lawful interest upon his notes, as for so much cash advanced, and *had then exacted the additional commission, I should have had no doubt of the usury. It is said to be settled, in *England*, that a country banker may take a reasonable commission for discounting, though it be for a person resident in *London*, and paid through a banker there, unless the bills were sent into the country as a mere color and device. The ground of the allowance is the expense of remitting checks, establishing a credit with bankers in *London*, keeping an unproductive balance there, and keeping a clerk. (*Jones ex parte*, 17 *Vesey*, 332.)

I shall, therefore, decree, that the defendant deliver up the deed of the 27th of *January*, 1810, and release to the plaintiff his right and title to the lots in question, with proper and apt covenants, to be settled by a master, against his own acts, and that he pay the costs of this suit.

Some questions arose on settling the form of the decree in this case.

It was admitted, that recitals in the decree must not be argumentative, but should only state the propositions or conclusions of law and fact, which are necessary to show the reason and meaning of the decree; (see a precedent for this purpose in the decree, in 2 *Sch. & Lef.* 455.) though Lord *Alvanley* said, in 7 *Vesey*, 373, that it was very uncommon to express in the decree the reasons for it. It was further observed, that if a deed be set aside as only constructively fraudulent, it is usual and proper to direct a release of the right of the party under the deed so set aside, with covenants against his own acts; and the chancellor directed the decree to be so drawn in this case. But in *Bates* v. *Graves*, (2 *Vesey, jun.* 294.) Lord *Rosslyn* thought a reconveyance altogether unnecessary, where the deed was declared absolutely null for fraud; and yet, it was there said to be the practice to direct a reconveyance, *ex abundanti cautela*, for the sake of purchasers. It was, however, not done in this case.

*The following decree was entered in the cause:—

"It satisfactorily appearing to the Court, that the deed of conveyance, mentioned in the pleadings in this cause from

155

*Margin notes:*

1816.

DEY
v.
DUNHAM.

[ *194 ]

*October* 11th.

Form of decree.

[ *195 ]
Decree.

*Matthias Ward*, also in the pleadings mentioned, to the defendant *David Dunham*, bearing date the twenty-seventh day of *January*, in the year of our Lord one thousand eight hundred and ten, for fifty lots of ground, situate, lying, and being in the ninth ward of the city of *New-York*, though an absolute and unconditional deed upon the face thereof, was intended by the parties only as a security, in the nature of a mortgage of the said premises to *David Dunham ;* and it also satisfactorily appearing to this Court, from the pleadings and proofs therein, that the said deed of conveyance of the twenty-seventh day of *January*, in the year of our Lord one thousand eight hundred and ten, from *Matthias Ward* to the defendant, was never registered, nor recorded as a mortgage, and that the instrument in writing, in the pleadings mentioned, of the twenty-seventh of *July*, in the year one thousand eight hundred and ten, whereby the said deed of conveyance of the twenty-seventh day of *January*, in the year one thousand eight hundred and ten, appears to have been intended only as a security in the nature of a mortgage, was never registered nor recorded with the said deed, or otherwise, according to the directions of the act of the legislature of this state, in such case made and provided; and it also appearing to the Court, that the defendant omitted to register or record the said deed of conveyance, and instrument in writing operating as a defeasance thereof; and it also satisfactorily appearing to this Court, that *Matthias Ward*, afterwards, in form of law, conveyed and assigned the same premises to the complainant, by deeds of conveyance, the one bearing date the eleventh day of *May*, in the year of our Lord one thousand eight hundred and twelve, and the other bearing date the sixteenth day of *November*, in the same year, in trust for the payment of the debts of *Matthias* [ * 196 ] *Ward*, and one *William Ward*, his co-partner in trade and business, justly due to their creditors ; and it also satisfactorily appearing to this Court, that the defendant *David Dunham* has sold and conveyed away two of the said lots of ground, contained in the said deed of conveyance from *Matthias Ward* to him, before mentioned, and received the consideration money for the same from the purchasers : It is therefore ordered, adjudged, and decreed, and his nonor the chancellor, by virtue of the power and authority of this Court, doth accordingly order, adjudge, and decree, that the defendant *David Dunham* forthwith deliver up to the complainant *Anthony Dey*, the said deed of conveyance from *Matthias Ward* to the defendant, in the pleadings mentioned, bearing date the twenty-seventh day of *January*, in the year one thousand eight hundred and ten, to be cancelled ; and that the defendant also, by a competent deed of conveyance

156

for that purpose, release and convey all his right, title, and interest of, in and to the premises in the last mentioned deed specified, and thereby conveyed to the defendant by *Matthias Ward*, (excepting the two lots, parcels thereof, afterwards sold and conveyed by the defendant as aforesaid,) to the complainant in this cause in fee; and that the said deed of conveyance from the defendant to the complainant hereby directed, shall contain proper and apt covenants from the defendant, against his own acts and transactions subsequent to the eleventh of *May*, one thousand eight hundred and twelve, whereby the title to the said premises may be impaired, or the said premises encumbered; the said deed and covenants to be settled by a master, if the parties cannot agree respecting the same. And it is further ordered, adjudged, and decreed, that the defendant pay to the complainant the costs of this suit, to be taxed, and that the complainant have execution for the same, according to law, and the course of this Court."