*June 23d* and *29th*, and *September 28th.*

C. & S. S. PERINE *against* DUNN.

A voluntary deed, not delivered to the grantee, and kept concealed from the public for near eighteen years, during which time the grantor remained in possession of the premises, as owner, cannot be set up against a third person dealing with the grantor, as owner, although he may have heard of the existence of the deed, at the time he took his mortgage. But the grantee being the heir at law of the grantor, has a right to redeem.

Advancing money to a poor man to enable him to prosecute his suit, is not *maintenance.*

THE bill stated, that *Simon Swaim*, father of the plaintiff, *Catharine Perine*, and grandfather of the plaintiff, *Simon S. Perine*, being seised of a farm in *Richmond* county, and being about to marry a second wife, the widow *Dorothy G.* who, having a considerable estate, had, in contemplation of the marriage, with the knowledge and assent of *S. S.* conveyed it to the use of her children, in consequence thereof, and in contemplation of the said marriage, and in consideration of natural love and affection for the plaintiff, *Catharine*, his only child, did, by his *deed*, bearing date the 14th of *November*, 1794, convey the farm in fee, with covenants as to the title, &c., to his daughter, the said *Catharine*, then the wife of *Joseph Perine*, since deceased. That *S. S.* soon after married *Dorothy G.* That the deed was acknowledged, on the 19th of *January*, 1802, and recorded in the office of the clerk of the county, on the 13th of *November*, 1805. That *C. P.* and her husband permitted *S. S.* to continue in possession of the farm, as tenant at will, or sufferance, until 1812, when the plaintiff, *C. P.*, and her husband, took possession, by putting the plaintiff *S. S. P.* into possession as their tenant, excepting a small part of the dwelling house, in which *S. S.* was still permitted to continue with his family. That the tenant, by the directions of *C. P.* and her husband, has

furnished *S. S. gratis*, with such reasonable portion of the proceeds of the farm as was thought necessary for his comfortable subsistence. That when *S. S.* executed the deed to *C. P.* he was not indebted, and was possessed of other real estate in *Richmond* county. That in consequence of the injurious conduct of *S. S.* and his wife, in relation to the farm, and their vexatious conduct towards the tenant, the plaintiff *C.* and her husband brought an action of ejectment, in 1813, against *S. S.*, to recover that part of the dwelling house in his possession (which suit abated by the death of *S. S.* in *April*, 1816.) That on the 28th of *December*, 1813, *C. P.* and her husband filed a bill against *S. S.* and wife, and the defendant, alleging waste and praying an injunction, &c.(*a*.) That in *March*, 1814, *S. S.* filed his bill against *C. P.* and her husband, and *S. S. P.*, to set aside the deed of the 14th of *November*, 1794, on the ground of ignorance and fraud, in obtaining possession of it, and praying an injunction to stay the ejectment suit. That before appearance, the husband of *C.* died, and the suit was continued against the surviving defendants, who appeared and answered, and the injunction was dissolved. That since filing the bill in *December*, 1813, and pending that suit, the defendant has fraudulently obtained from *S. S.* a deed of all his real estate, not previously conveyed to *C.*, and a bond for 1,000 dollars, and a judgment thereon, and also a *mortgage* from *S. S.* and his wife, of the premises before conveyed to *C.*, for better securing the payment of the 1,000 dollars. That the defendant, when he took the mortgage, knew of the prior deed of 1797, to *C. P.*, and that *S. S. P.* occupied the premises, as her tenant. That no part of the sum mentioned in the bond, judgment and mortgage, was, in fact, due to the defendant; but the same were executed fraudulently, in order to defeat the title of *C.*, and to dis-

(*a*) Vide 2 *Johns. Ch. Rep.* 475. The bill was dismissed in *June*, 1817, on payment of costs.

turb the possession of *S. S. P.* That the defendant issued a *fi. fa.* on the judgment, on which the sheriff sold some household furniture of *S. S.* That the defendant directed the sheriff to levy on the real estate conveyed to *C. P.*, which he refused to do, unless indemnified, and returned the execution *nulla bona*, beyond the personal property sold; and the defendant, therefore, brought an action against the sheriff for a false return. That the defendant brought an action of ejectment founded on the mortgage, against *S. S.* and *S. S. P.* ; but his attorney having refused to exchange consent rules, in which *C.* was to be made defendant, the cause remains pending, which the plaintiffs allege was evidence of fraud between *S. S.* and the defendant, to subvert the title of *C.*, and that in pursuance of this fraudulent combination, the defendant had advertised the premises for sale, under a power contained in the mortgage, on the 1st of *April*, 1816. That *S. S.* before the date of the bond and mortgage, by age, was impaired in mind, and not competent to transact monied concerns, and had become an instrument to promote the fraudulent views of the defendant. That if the mortgage be valid security for any sum due, the plaintiff *C.* wished to redeem, after her title should be established in the suits now pending, &c.

The plaintiffs prayed that the bond and judgment of *S. S.* to the defendant may be set aside, or declared void, as respected *C.*, and her land; and that if they should be deemed valid *liens* on the land, that an account should be taken of what was due to the defendant, for which he had such lien, and that *C.* be let in to redeem; and that an injunction might issue to restrain any execution or sale on the judgment, or under the mortgage, or from further prosecuting the sheriff for a false return, or proceeding in the action of ejectment, &c.

The defendant, in his answer, stated, that when *S. S.* was about to be married to *Dorothy G.*, *Joseph Perine*, the husband of *C.*, with her knowledge, taking advantage of the ignorance of *S. S.*, and of his confidence in them, *C.*

1818.

PERINE
v.
DUNN.

being his only child, prevailed on him, secretly to execute a deed, without examination, for the purpose of defrauding *Dorothy* of her dower. That *J. P.* represented to *S. S.*, that the deed would only bar *D.* of her dower, and not deprive him of the enjoyment of the property during his life; and that *S. S.* might keep possession of the deed, and revoke it at his pleasure; and that, with such understanding, he executed the deed. That *J. P.* enjoined secrecy, and that *S. S.* made such explanations to the witnesses, and enjoined secrecy on them. That the deed was not delivered to *C.*, or to any person for her, but was given to one of the witnesses to keep. That *S. S.*, afterwards, on the same day, was married. That he retained the deed in his possession, until it was surreptitiously obtained from him by *J. P.* That about eight years after the execution of the deed, *J. P.* prevailed on *S. S.* to go before a judge and acknowledge the deed, which he did, in a secret manner, and with the belief, that his doing so would not give any greater validity to the deed; that *J. P.* being the *clerk* of the county, fraudulently and secretly took the deed from *S. S.* and secretly recorded it, as mentioned in the bill; but purposely omitted to enter it in the *index* to the book of records for the purpose of concealing the record; and he, afterwards, denied that it was recorded. That *J. P.*, immediately after he had so recorded the deed, returned it to the possession of *S. S.* before he had missed it, and *S. S.* kept it in his possession until the summer of 1811, when *J. P.* requested of *S. S.* permission to see it, and then fraudulently kept it, and never returned it to *S. S.*, but made use of it, in order to turn *S. S.* out of the premises. That *S. S.* afterwards demanded the deed, and its delivery back to him; and then *J. P.*, for the *first time*, laid claim to the premises by virtue of the deed, being nearly twenty years after its execution.

The defendant denied that the plaintiff *C.*, and her husband, ever permitted *S. S.* to remain in possession, or that

1818.

PERINE
v.
DUNN.

he held possession, *as tenant*, or that *C.* had any right to the premises, except as *heir* of *S. S.* He denied that *C.* and her husband ever put the grandson into possession, and alleged that *S. S.* was in full possession, until the grandson was employed to work on the farm upon shares. That in 1812, the grandson informed *S. S.* that he was about to be married, and requested permission to live in part of the house, and to work on the farm, for half the produce, as a compensation for his labour; that *S. S.* acceded to the proposal; and the grandson, for a year, divided the produce of the farm, and then, in concurrence with *C.* and her husband, refused any longer to comply with the agreement, and retained all the produce of the farm, and refused all necessary relief and support to *S. S.* &c. &c. That the defendant, at the request of *S. S.*, cut some firewood for *S. S.*, and the grandson forbade it, and the plaintiff *C.* and her husband, then brought three actions of trespass against the defendant, in the Supreme Court, and filed a bill in Chancery for an injunction to *stay waste*, and the injunction was issued, saving reasonable *estovers.* That in *December*, 18 3, a short time before, *C.* and her husband brought the action of ejectment against *S. S.* and these suits were commenced in order to harass and terrify *S. S.* into a compliance with their views, and to a surrender of his rights.

The defendant admitted, that he obtained from *S. S.* the bond for 1,000 dollars, dated 7th of *February*, 1814, and a mortgage and judgment; but denied that he knew when he took the mortgage, that the premises had been conveyed to *C.*, and he denied that the grandson was in possession at the time, except as a tenant. That before he ever heard of the deed of 1794, *S. S.* became indebted to the defendant in a considerable sum, as well as to other persons, on the credit of the farm in his possession. That after the deed became known, three suits were commenced against *S. S.* for these debts, as well as the other

suits by *C.* and her husband; that the defendant applied
to *S. S.* for security for his debt, and *S. S.* promised to
give him a mortgage on the farm, provided he would ad-
vance money to supply his wants, and become security to
pay the money necessary to defend the suit, &c.

That *J. P.* acknowledged that the deed was given to defeat
*Dorothy* of her dower; that believing the deed to be fraud-
ulent, and being desirous to secure the money due to him,
and, also, to assist *S. S.* in his distress, the defendant agreed
to advance such sums, and to pay such further sums for *S.
S.* as would make his demand 1,000 dollars, and take a
mortgage. That, accordingly, on the 7th of *February*,
1814, a *bond* was executed for that sum, payable the 1st of
*April* following, and also a mortgage, which was recorded
the 25th of *April*, 1815, after the death of *J. P.* That
the defendant gave *S. S.* a note for 125 dollars, which he
has since paid; and he covenanted to pay the amount of
637 dollars, and 41 cents, costs which *S. S.* might be bound
to pay, in the suits which *C.* and her husband had instituted
against him, being three suits in the Court of Common
Pleas, three in the Supreme Court, and one in Chancery,
and also, the costs of the suit in Chancery about to be
commenced by *S. S.* That a very considerable part of
the 637 dollars, and 41 cents, has been paid by the defend-
ant, and he has become absolutely bound to pay the resi-
due of it. That the two sums of 125 dollars, and 637
dollars, and 41 cents, together with what *S. S.* owed to the
defendant, amounted to the exact sum of 1,000 dollars.
That *S. S.* was too poor to retain counsel to carry on his
suit, and to obtain the testimony of some of the witnesses.
That he, on the 21st of *April*, 1815, confessed judgment
on the bond to the defendant, and an execution was issued,
on which personal property was taken and sold, to the
amount of 125 dollars, and 77 cents, which the defendant
credited *S. S.*, and suffered *S. S.* to use the property, out of
compassion. That the defendant directed the sheriff to

1818.

PERINE
v.
DUNN.

levy on the farm in question, which he refused to do without indemnity, and the defendant sued him for a false return; that the defendant, afterwards, brought an action of ejectment, which was stayed by an injunction in this cause; and the defendant then sought to foreclose the mortgage by advertising a sale under the power. That *S. S.* was fully competent when he gave the bond and mortgage, and executed them with full knowledge and understanding, and retained his faculties until his death, &c.

About thirty witnesses were examined on each side, and a great mass of evidence taken in the cause, some of which was contradictory. The material facts proved, are sufficiently stated by the Court.

*June 23d, 24th, 25th, 26th, 27th, and 29th.* The cause was argued in *June* last, by *Riggs* for the plaintiffs; and by *Wallis* and *Baldwin* for the defendant.

*September 28th.* The cause stood over for consideration until this day.

THE CHANCELLOR. The plaintiff, *Catharine*, seeks to set aside as void, the mortgage and judgment given to the defendant by her father, *Simon Swaim*; but if either of them were to be regarded as valid liens, she then prays that an account may be taken of what is due upon such lien, and that she may be let in to redeem.

She rests her claim to set aside the mortgage, &c. on her title, as owner of the land, under a deed from her father of the 14th of *November*, 1794. The bill was originally against him, as well as *Dunn*, the mortgagee, but *Swaim* dying before the answers came in, it was admitted on the part of the present defendant, that the plaintiff, *Catharine*, was his only child and heir at law. Her title to the land, subject to the incumbrance, is indisputable. She inherits a title to it as heir, if she had not, before, a title to it by deed.

The defendant holds a bond and mortgage executed to him by *Simon Swaim*, in *February*, 1814, for 1,000 dol-

1818.

PERINE
v.
DUNN.

lars, and the main question is, whether that mortgage be a valid lien on the lands claimed by the plaintiff. The judgment which the defendant afterwards obtained, was for the same mortgage debt, and was confessed, in order to facilitate the recovery, and it may be placed out of view in respect to the present inquiry.

1. The first point is, whether the plaintiff, *Catharine*, had, at the time the mortgage was taken, a valid title to the land, under her deed of 1794, so as to defeat the claim under that mortgage.

The deed of 1794, was executed on the day that *Simon Swaim* married his second wife, *Dorothy*, and it was executed a short time previous to the marriage. It was a voluntary conveyance, without any valuable consideration; it was concealed from the wife, and its object was to cut off her claim for dower, if she should survive her husband.

This deed, as I conclude from the case, was executed under the influence of the plaintiff *Catharine*, and her husband, and it was not intended by any of the parties in interest, to go into operation until the death of *Swaim*. It was not delivered to the daughter, but to one of the subscribing witnesses. It was intended to be, and for upwards of eighteen years afterwards continued to be, a transaction concealed from the world. The grantor continued in possession of the farm, and acted as owner, and was reputed, and had credit as owner, from the date of the deed in 1794, down to the year 1813, when the family quarrel first broke out, and the claim under the deed was first publicly advanced.

It will not be necessary for me to go minutely through the volume of testimony which has been compiled in this case. A great part of it might have been spared, for it is idle and useless repetition. My impression is very strong, that the deed was of the character I have mentioned, and was intended by all the parties concerned to be kept se-

cret, and was studiously concealed from the knowledge of the public from the time of its execution, down to 1813. I am equally clear in my conviction, that the deed was taken into the permanent possession of *Catharine's* husband, contrary to the intention, and without the consent of the grantor, and that he never intended to abandon the possession, or his right to the enjoyment of the farm. His object, in admitting his grandson into the possession, in 1812, was not that he was to occupy as tenant to *Joseph* and *Catharine Perine,* or either of them, but that his grandson might assist him in the management of the farm, which he felt himself unable to manage, through the feebleness of age. His grandson came in under him, for that purpose, and he was admitted to share equally in the profits, as a compensation for his services. The subsequent efforts on the part of *Joseph* and *Catharine P.* and their son, to deprive *Simon Swaim* of the possession and use of the farm, and to separate him from the society and assistance of his wife, were violent unnatural, and unjust. I think I do not use epithets that are not well warranted. The case strikes me in this light, after noticing the object and history of the deed, and after reading and comparing the testimony.

A voluntary deed executed for such a purpose, and not delivered to the grantee, but kept concealed, and unaccompanied with delivery of possession, cannot be set up against any third person dealing with *Swaim,* as owner. I state this as a clear and obvious principle of law and policy ; and it is perfectly immaterial whether rumors of the existence of the deed did or did not come to the knowledge of such third person. He was not bound to listen to the rumor, nor to give credit to such a deed. Lord *Hardwicke* considered, (1 *Atk.* 16.) that a continuance in possession, after a voluntary deed, was a strong circumstance of fraud. The rule on this subject, was correctly stated by Lord *Rosslyn,* in *Bates* v. *Graves,* (2 *Vesey,* jun.

392.) He says, "that where there is a conveyance of an estate, and possession is retained, *towards all third persons,* the person to whom it is conveyed will not be allowed to be considered as owner, nor will the ownership be devested." The court of Chancery, according to the cases, (*Pulvertoft* v. *Pulvertoft,* 18 *Vesey,* 84. *Smith* v. *Garland,* 2 *Merrivale's Rep.* 123.) will not act in favour of, or help a voluntary conveyance, but will remain neutral in respect to it; and surely this course will be adopted, when the conveyance has such a fraudulent stamp, and has been so kept and applied as the one in question.

In this case, the claim under the voluntary conveyance was set up before the existence of the mortgage; but when we consider the history of the deed, and the circumstances under which the claim has been made, the priority of the claim cannot give the deed any additional force, as respects third persons. The grantor never gave possession under the deed, but, to the day of his death, he resisted the pretension under it, as unjust and fraudulent. Such a deed cannot be permitted to have any operation in this Court, as against the rights of the defendant. It was made, and kept concealed, and then finally acquired, and used for unjust or unconscientious purposes. The bond and mortgage ought to be tested by their own intrinsic merits, and not be suffered to be affected by that deed in any possible degree.

2. Putting the deed entirely out of view, the next question is, upon what terms is the plaintiff *Catharine,* as heir at law, entitled to redeem?

A great deal of testimony has been taken respecting the competency of *Simon Swaim* to transact business, in *February,* 1814, when he gave the bond and mortgage to the defendant. My conclusion is, that he was of competent mind and memory, and that he acted knowingly and understandingly, when he executed those instruments. There would be no safe dealing among men, and especially with men in the decline of life, if solemn contracts can

1818.

PERINE
v.
DUNN.

be annulled upon such loose and vague opinion as is offer-
ed in this case, to prove a want of sanity in the mortgagor.
The ordinary infirmities of age, and occasional acts of in-
temperance, are not sufficient to impeach a deed, when no
unfair practices have been used, and especially when it is
shown as a positive fact, that the party was competent, and
understood himself well at the time.

It is, next, urged, that a part of the consideration of the
bond was illegal, and founded on the offence of mainte-
nance, being for pecuniary assistance given, or pledged,
for the costs of the law suits in which *Simon Swaim* was
involved.

The bond was given partly for moneys due to the de-
fendant, and partly for assistance given to *Swaim*, to ena-
ble him to defend himself at law and equity, in the pos-
session and use of his farm. The defendant agreed to pay
637 dollars 41 cents, towards costs of suits, in which
*Swaim* was a party, and he gave a note for that sum to
Mr. *Wallis*. But under the circumstances of the case, at
the time, it was so far from being illegal, or amounting to
the common law offence of maintenance, that it was a
very meritorious and commendable act of charity. The
situation of *Swaim* was one of great distress, and which
naturally excited sympathy. He was deprived of credit
and resources, and almost cut off from the common neces-
saries of life, by the efforts of his daughter, and of her
husband and son, to deprive him of his farm, and separate
him from his wife. He might justly have *taxed his daugh-
ter with unkindness ;* and assistance, at such a crisis, by
the son of his wife, was an act of benevolence that must
have been most grateful to his feelings. To hold the as-
sistance given by the defendant unlawful, would, as Mr. J.
*Buller* observed when speaking of the harshness of the
ancient doctrine of maintenance, be " repugnant to every
honest feeling of the human heart." It is accordingly,
now held to be the law, (*Hawk. Pl. C.* tit. *Maintenance,*

*s.* 20. 26.   4 *Black. Com.* 134.) that any one may lawfully give money to a poor man, to enable him to carry on his suit; and that whoever is, in any way, of kin or affinity to either of the parties, may assist him, or apply to counsel to assist him.

I shall, accordingly, declare, that the plaintiff cannot be let in to redeem, but on paying the sum due upon the bond and mortgage, and including therein, as a valid part of the consideration, the costs which the defendant has paid, or engaged to pay, for *Swaim*; and upon paying, also, the costs of this suit, and the costs of the action of ejectment, brought by the defendant upon the mortgage; and, also, the costs of the proceeding, under the power to sell, contained in the mortgage.  In respect to the judgment and the execution, I shall perpetually enjoin any farther proceeding thereon.  A reference must, accordingly, be had, to compute the amount due on the bond and mortgage, after crediting the plaintiff with any payments shown to have been made thereon, or with any moneys collected upon the execution.