## ZADOCK JACKSON *v.* J. D. LODGE.

FORMER JUDGMENT AN ESTOPPEL.—The judgment of a Court of competent jurisdiction upon a material matter, put directly in issue by the pleadings, is *res adjudicata* as to that issue, and the parties are estopped by the judgment from litigating it again.

ESTOPPEL BY JUDGMENT.—If the defense made by sureties to a promissory note is, that a deed to a tract of land has been given to the plaintiff by the principal to the note, in satisfaction thereof, and the case is tried on this issue, and judgment rendered for the defendants, this is *res adjudicata* as to that issue; and the same matter cannot be again litigated between the parties in an action to recover possession of the land.

EVIDENCE OF A JUDGMENT AS AN ESTOPPEL.—If, on the case made by the complaint, the defendant is not called upon, or has no opportunity to plead a former

judgment as an estoppel, it may be received in evidence as matter of estoppel, without having been pleaded.

ESTOPPEL OF JUDGMENT WHEN ONE DEFENDANT SUFFERS DEFAULT.—The fact that one defendant, who suffered judgment by default, is not estopped as to an issue made by the other defendants, upon which they succeeded, does not prevent the judgment upon this issue from being an estoppel between the plaintiff and the defendants who pleaded it.

EVIDENCE THAT A DEED IS, IN FACT, A MORTGAGE.—In California parol evidence is admissible at law, as well as in equity, to show that a deed, absolute on its face, was given as security for money, and is, in fact, a mortgage.

IDEM.—In an ordinary action of ejectment, the plaintiff will be allowed to show by parol evidence that an older deed, absolute on its face, made by the plaintiff's grantor to the defendant, and first recorded, was given as a mortgage.

NO TITLE PASSES BY MORTGAGE.—No title passes to the grantee by a deed absolute in form, and without any defeasance, if the purpose of the deed was to secure a debt; and in this respect conveyances absolute on their faces stand on the same footing as conveyances with a defeasance.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The complaint was as follows:

"Plaintiff complains of defendant, and for cause of action alleges that on the 21st day of September, 1865, he, this plaintiff, was the owner, seized in fee simple, of all that certain tract or parcel of land situated in the County of Sonoma, State of California, being a portion of the allotment Number Five (5) of the Rancho Roblar de la Miseria, bounded and described as follows, to wit:"

Here followed a description of the land.

"Plaintiff further alleges, that afterwards, to wit: On the 22d day of September, 1865, while he was so seized of said land and appurtenances, the defendant unlawfully, wrongfully, against the will, and without the consent of this plaintiff, entered into and upon said tract of land, ousted and expelled this plaintiff therefrom, and took possession thereof and of the appurtenances, and has ever since withheld, and still withholds the possession thereof from this plaintiff, and has ever since kept, and still keeps this plaintiff expelled

therefrom, and from every part thereof. Wherefore, plaintiff prays for judgment against defendant, that he have restitution of said land, tenements, and other appurtenances, for his costs of suit, and for such other or further relief as may be just."

The answer was as follows:

"J. D. Lodge, the defendant in the above entitled action, in answer to the complaint of the plaintiff therein, denies each and every allegation in plaintiff's complaint, except as hereinafter admitted and alleged. Said defendant, for a further and separate defense, alleges that heretofore, to wit: on the 25th day of July, A. D. 1860, he was, ever since has been, and now is the owner, seized in fee and possessed of the lands described in plaintiff's complaint. Wherefore, the defendant prays for judgment against the plaintiff, that he is the owner of said lands, and for his costs and necessary disbursements in the action."

During the progress of the trial the Court admitted parol testimony on behalf of the plaintiff tending to show that the deed from Turman and wife to Lodge of July 25th, 1860, although absolute on its face, was, in fact, given as a mortgage. The defendant excepted.

The case was tried by the Court without a jury, and judgment rendered for the plaintiff. The defendant appealed.

The other facts are stated in the opinion of the Court.

*F. D. Colton,* for Appellant.

We do not claim that the title to this land was adjudicated upon in the case of *Lodge* v. *Turman et al.,* nor that the record in that action is a bar to this. But the question of fact, whether or not the deed to Lodge was a mortgage, was tried in that action, and the record in that case is conclusive of the fact that the instrument was a deed. The fact that it is a deed having been judicially determined between these

parties, it is *res adjudicata,* and neither of the parties, in any subsequent or different controversy, can dispute the fact so judicially found and determined.

There may be a judicial determination of a fact, as well as a judicial determination of a case. A case is a series of material facts necessary to a judgment. Each of these material facts must, in effect, be found by a Court or a jury before the final judgment can be rendered. This final judgment is the conclusion of law arising from the material facts found. When such facts are found and judgment rendered thereon, they become settled and determined for all time as between the parties, and cannot be disputed or denied by either of them, wherever or however met. (*Chase* v. *Walker,* 26 Maine, 558, 559; *Perkins* v. *Walker,* 19 Vermont, 147; *Adams* v. *Barnes,* 17 Mass. 367; *Bell* v. *Raymond,* 18 Conn. 95; *Ehle* v. *Bingham,* 7 Barbour, 495; *Daty* v. *Brown,* 4 Comstock, 73; *Christian* v. *Penn,* 7 Georgia, 435; *Birckhead* v. *Brown,* 5 Sandford, 139; *Bank of United States* v. *Beverly,* 1 Howard, U. S., 148, 149; *Castle* v. *Noyes,* 14 N. Y., 4 Kernan, 330; *LeGren* v. *Governeur,* 1 Johns. Cas. 492; *Edwards and others, administrators* v. *Stewart,* 15 Barbour, 67; *Davis* v. *Talcott,* 12 N. Y., 2 Kernan, 187; *Harris* v. *Harris,* 36 Barbour, 93; *Treadwell* v. *Stebbins et al.,* 6 Bosworth, 547; *Chamberlain* v. *Galliard,* 26 Alabama, 509; *Grant* v. *Ramsey,* 7 Ohio, N. S., 162; *Kingsland* v. *Spaulding,* 3 Barbour Ch. 343.) Where the pleadings are general, the judgment is conclusive of those facts which the Court or jury *must have found.* (*Gardner* v. *Buckbee,* 3 Cowen, 126, 127; see, also, *Burt* v. *Sternbergh,* 4 Cowen, 562; *Coit* v. *Tracy,* 8 Conn. 276.)

The plaintiff, in his answer in the case of *Lodge* v. *Turman, Waggle, and Jackson,* alleged that the deed to Lodge was a deed, and conveyed this land to Lodge, and paid his note to Lodge. He supported his allegations by proof. He convinced the Court that they were true, and thereby paid the note. Lodge lost the five hundred dollars, and interest, and costs, and Jackson saved the same. Jackson received the

full benefit of this decision so gained, and Lodge sustained the loss thereby occasioned. Jackson cannot now turn around and aver that he obtained the former judgment falsely, and having paid the note with the land, recover the land back. (*Hall* v. *Haun's Heirs*, 5 Dana, Ky., 56.)

Deceit, and damage therefrom, is the usual ground upon which estoppels are supported. In this case, Lodge was not deceived, and was not directly influenced by the deceit of Jackson. But the Court was deceived, and compelled Lodge to suffer the loss. Jackson, instead of deceiving Lodge to obtain this advantage, employed force to obtain it. The difference is not in Jackson's favor.

In the English notes to *Trevivan* v. *Lawrence et al.*, (2 Smith's Leading Cases, marginal page 437, as published by T. and J. W. Johnson, A. D. 1847,) is the following passage: "It is wise, therefore, to provide certain means by which a man may be concluded, not from saying the truth, but from saying *that which, by the intervention of himself or his*, has once become accredited for truth, is false."

Now Lodge comes into Court and avers that his former allegations and proofs were false, and seeks to recover upon the direct allegation that his former averments were false. He waits till the Statute of Limitations has run upon the note, and then asserts that the instrument is simply a mortgage, and therefore did not convey the land, and that, therefore, he is entitled to it.

I am aware of the answer that will be made to this, viz: that Jackson did not then own the land. We reply, that the fraud is none the less on that account. Perhaps Jackson could defeat the note upon the ground that the instrument was a deed, and that another man could recover the land upon the ground that it was a mortgage. But Jackson himself cannot succeed on both grounds. (*Sheppard* v. *Hamilton*, 29 Barbour, 159.)

*Patterson, Wallace & Stow*, for Respondent.

I. Separate distinct defenses, as "payment" and "release," must be pleaded and tried separately, as they were in the action of *Lodge* v. *Turman et al.*, and the trials are, as to affirmative matter set up by defendants, just as distinct as though they constituted separate and distinct cross bills in equity, either of which, if sustained, would bar plaintiff from proceeding with his action in assumpsit.

II. The first plea in that case, "payment by the deed," was decided adversely to defendants, Jackson and Waggle; the subject was exhausted, and had that been the only plea, the order of the Supreme Court would have been, that judgment for plaintiff be entered; and hence, the plea of payment by deed was distinctly, fully decided, at Lodge's instance, by showing that the deed was no deed, and conveyed nothing. (*Lodge* v. *Turman et al.*, 24 Cal. 385.)

III. A deed, absolute upon its face, may be shown to be a mortgage. (*Lodge* v. *Turman et al.*, 24 Cal. 385; *Cunningham* v. *Hawkins*, 27 Cal. 603.)

IV. The mortgagor, and not the mortgagee, has the legal title. (*Nagle* v. *Macy*, 9 Cal. 429; *Johnson* v. *Sherman*, 15 Cal. 292; *Cummings* v. *Cole*, 10 Cal. 530.)

V. The legal title must control in an action of ejectment. (*Clark* v. *Lockwood*, 21 Cal. 220.)

Upon these last three propositions depends plaintiff's case; and as they cannot be denied, and the evidence establishes them for plaintiff, defendant relies upon these counter propositions. He says that:

"The case of *Lodge* v. *Turman et al.* decided the fact that the five hundred dollar note signed by Turman, Jackson, and Waggle, was, as between Lodge, Jackson, and Waggle, paid by the deed of Turman to Lodge; hence, this fact having been found by the Court, Jackson is now estopped from showing the fact to be otherwise."

This proposition is fallacious in this:

1st. The finding of fact is not a judgment, and is only an incident thereto, and does not charge or estop any one;

estoppels must be construed most strictly against the party relying thereon. (*Osborne* v. *Endicott*, 6 Cal. 153.)

2d. If the finding would alone have constituted any bar or estoppel, had it been essential to the rendition of the judgment, it is not in this instance so, because the finding may be stricken out, and the other finding, which sustains the second plea, "release," would be sufficient to sustain the judgment; nor has this matter any of the characteristics of an estoppel or bar. (*Burritt* v. *Dickson*, 8 Cal. 117; *Boggs* v. *M. M. Co.*, 14 Cal. 367; *McCracken* v. *San Francisco*, 16 Cal. 626.)

4th. This finding did not affect Turman at all. Lodge sued all three; Turman made default, and for all we know, has paid the judgment taken against him on this note, and it cannot be pretended that he was in any way "barred" by this finding. Admitting, for the sake of argument, that Jackson was, on the day of the rendition of this judgment, (August 2d, 1865,) subject to this bar or estoppel, on the 4th day of August, 1865, he bought the title of Turman, wholly unaffected by this bar, and this after-acquired title is the one at issue in this action. (*Bowman* v. *Cudworth*, 31 Cal. 148; *Flandreau* v. *Downey*, 23 Cal. 354; *Caperton* v. *Schmidt*, 26 Cal. 490.)

5th. This bar or estoppel, whichever it may be claimed to be, is a special plea, and should have been so made and sustained. (*Clark* v. *Huber*, 25 Cal. 597; *Davis* v. *Sharp*, 30 Cal. 630.)

6th. If it be claimed that the evidence which would have sustained the plea of "bar" was admitted without objection, then this would be the condition of things: the evidence being admitted without objection, the party having the affirmative upon the special plea is to be considered to have done what, had the objection been made, he might have done, to wit: amended his pleading by making his special plea. The plea of "bar," being made, would have required a finding of facts to sustain it, because it admits the truth to be adverse to the theory favorable to the side upon which the "bar" is claimed, but tenders an issue in avoidance, new,

special, and affirmative. There is no finding which would sustain the plea, nor is there any showing made that such a finding was requested and denied, or to such denial exception taken. The plea of "bar" or "estoppel," at most, can therefore only have been tendered and not sustained; a finding is imperatively requisite. (*Luckman* v. *Wood*, 25 Cal. 149; Co. Litt. 227a, 352b; *Lansing* v. *Montgomery*, 2 Johns. 382; *Bryan* v. *Maume*, 28 Cal. 238; *Hurlburt* v. *Jones*, 25 Cal. 227; *Calderwood* v. *Brooks*, 28 Cal. 151; *James* v. *Williams*, 31 Cal. 211; *Green* v. *Clark*, 31 Cal. 591; *Miller* v. *Steen*, 30 Cal. 402; *Troy* v. *Clark*, 30 Cal. 419; *Jenkins* v. *Frink*, 30 Cal. 586–595.)

By the Court, SAWYER, C. J.:

This is an action to recover the possession of certain land, the title to which, on the first Monday in May, 1860, was in one B. C. Turman. Said Turman being at the time the owner in fee, by a deed in due form, absolute on its face, bearing date the 25th of July, 1860, conveyed said land to the defendant, Lodge, who is in possession, claiming title under said deed. Subsequently, on the 4th of August, 1865, said Turman, in due form, executed and delivered a second conveyance of the same land to the plaintiff Jackson, under which deed he claims to recover in this action. On the 25th of July, 1860, said plaintiff, Jackson, jointly with said Turman and one, Waggle, executed a promissory note for four hundred dollars, in favor of defendant Lodge. After the maturity of said note, defendant, Lodge, brought suit against plaintiff, Jackson, and his co-makers, Turman and Waggle, to recover the amount due on said note, in which action Turman allowed judgment to go by default, but Jackson and Waggle answered, admitting the execution of the note, and setting up as a defense that they executed the note for the accommodation of Turman, without any consideration moving to them; that shortly after the making of said note, on or about the 6th of August, 1860, in order to release said

Jackson and Waggle, and to *pay and discharge said note*, said Turman made a conveyance of the lands on which he resided, to said Lodge, for the consideration of one thousand dollars, and that it was *understood and agreed* by and between the parties that five hundred dollars of said consideration should *go in payment and satisfaction of said note*. The land so alleged to have been conveyed in satisfaction of said note, and the conveyance referred to in said answer, is the land in controversy, and the said conveyance, bearing date July 25th, 1860, under which defendant claims. Lodge, in his replication, admits the said conveyance by Turman, but denies that it was executed for the purpose of releasing any of the defendants from liability on said note and to discharge the same; denies that said *note was any part of the consideration of said deed, or that there was any understanding that five hundred dollars of the consideration should go in satisfaction of the note sued on.* Thus, whether the purpose and object of said deed was in part to satisfy and pay the said note or not, was the direct and only issue, and the point litigated was whether the deed was intended to be a *conveyance in satisfaction* of the debt, or a *mortgage to secure it*, together with the further sum of five hundred dollars. And the finding of the Court on this issue was, "that the deed from Turman to plaintiff was by said Turman executed and delivered to plaintiff in *payment* of said note." It was, therefore, found to be an absolute deed, not a mortgage; and upon this finding the defendants had judgment. There was no other issue—no plea of release otherwise than in the mode alleged. Jackson, having succeeded in his defense against the note, on the sole ground that the deed from Turman to Lodge was a conveyance of the land in payment and satisfaction of the note, now seeks to recover the same land under his said deed of August 6th, 1865, on the ground that the said prior deed from Turman to Lodge, absolute on its face, and in a former action upon issue joined and trial had, found by the Court to be a conveyance of the land in satisfaction of the note, was not, in fact, an absolute conveyance in satisfaction of the note, but

only a mortgage to secure it. It is a singular fact, that the plaintiff Jackson, who, in a verified answer, alleged the instrument in question to be a conveyance in payment of the note, and proved it twice in the former action on the note— once to the satisfaction of a jury, and once to the satisfaction of the Court sitting without a jury—the first verdict having been set aside on appeal, and thereby escaped liability on the note, now, after getting rid of the note, and since the Statute of Limitations has run against it, for the purpose of recovering the land, has, also, been able, upon the other side of the question, to satisfactorily prove said conveyance not to be, in fact, a conveyance in satisfaction of the note, but only a mortgage to secure it. (See note, *Duchess of Kingston's Case,* and cases there cited; 2 Smith's Lead. Cases, 5 Am. Ed. 681, as to equitable estoppel in such cases.)

But the question now is, whether the purpose and character of the conveyance is not *res adjudicata,* which cannot be again litigated between the parties. And upon this point we have no doubt. The only material issue in the former trial was raised by the answer and replication, and that was as to the purpose of the conveyance. The fact of making the instrument was admitted. The purpose averred on one side, and denied on the other, was, that it was made to the extent of five hundred dollars in payment and satisfaction of the note, and the contest was whether the purpose was to *pay* or *secure* the note, and the issue was found for payment, and judgment accordingly entered on the finding. The purpose and character of the instrument was, therefore, directly in issue and determined within the rule as laid down in its most restricted sense, as in the cases of *Betts* v. *Starr,* 5 Conn. 552, and *King* v. *Chase,* 15 N. H. 15, to say nothing of the rule somewhat more liberally applied, perhaps, in numerous other cases, among which are *Chase* v. *Walker,* 26 Maine, 558; *Perkins* v. *Walker,* 19 Vt. 147; *Adams* v. *Barnes,* 17 Mass. 367; *Bell* v. *Raymond,* 18 Conn. 95; *Doty* v. *Brown,* 4 Comst. 73; *Castle* v. *Noyes,* 14 N. Y. 330; *Davis* v. *Talcott,* 12 N. Y. 187; *Gardner* v. *Buckbee,* 3 Cow. 121. It is clearly

within the rule, as stated in our own adjudications, and being so, the determination is conclusive. (*Caperton* v. *Schmidt*, 26 Cal. 493; *People* v. *Supervisors of San Francisco*, 27 Cal. 675; *Garwood* v. *Garwood*, 29 Cal. 521; *Gray* v. *Dougherty*, 25 Cal. 272.)

The matter of estoppel was properly in evidence; for the defendant, upon the case made by the complaint, was not called upon, and had no opportunity to plead it. The plaintiff did not set out his title. It was only developed in the evidence, and, therefore, could only be met by counter evidence. (*Young* v. *Rummell*, 2 Hill, 481; *Flandreau* v. *Downey*, 23 Cal. 358, and the cases just cited to the other point; also, 2 Smith's Lead. Cases, 5th Am. Ed. 682.)

It can make no difference that Turman would not have been estopped. Turman conveyed just as much, and no more, just as good title and no better, to Jackson, at the time he made the conveyance as he would if the conveyance had been made before the institution of the suit of *Lodge* v. *Jackson et al.* Had the conveyance been made before, Jackson would have had precisely the same title that he now has, yet no one would, in that case, have claimed that he would not be estopped by the adjudication, provided the matter was directly in issue. The question now is, not what title Jackson took by the conveyance, but whether he is concluded by the former adjudication of the same matter, in a suit to which he and Lodge were parties, in which he was directly interested in determining the character of the conveyance, and in which it was found and adjudged in his favor, that his grantor had already conveyed the land to Lodge. The benefits of that adjudication he has fully enjoyed. If he has taken a title which, however good it may be, he has once litigated and had adjudged, and thereby estopped himself from further litigating, he did it with full knowledge of the facts, and he cannot complain. At all events he is concluded.

Other findings which would support the judgment in this case must necessarily be inconsistent with the matter before

determined, and the evidence opposed to the matter of estoppel should also have been excluded.

The judgment and order denying a new trial are, therefore, on either ground, erroneous, and must be reversed.

The District Court refused to exclude the parol evidence introduced to show that the deed from Turman to Lodge, absolute on its face, was intended as a mortgage. We had regarded the rule as settled in this State in favor of the admissibility of such evidence, and should only have deemed it necessary to refer to former decisions, but inasmuch as there is not now a unanimity of sentiment as to the admissibility of such testimony *at law*, we deem it proper to more fully review the authorities on the question.

"A conveyance of property, *absolute in terms*, if intended by the parties to be a security for debt, *is a mortgage;* and such intentions may be manifested either by a written defeasance, executed simultaneously with the deed, or by *the acts or parol declarations* of the parties." (*Lane* v. *Shear,* 1 Wend. 437, and cases cited.) It has long been settled, in many of the States, at least, New York among the number, that in equity for all, and at law for most, purposes, the title to the land is really and in fact in the mortgagor, and not the mortgagee; and in this State it is now well settled by a long and unbroken line of decisions, from *McMillan* v. *Richards,* 9 Cal. 411, down to the present time, that the mortgagee has no title or estate in the land, but only a lien for the security of the debt. (*Naglee* v. *Macy,* 9 Cal. 428; *Haffley* v. *Maier,* 13 Cal. 13; *Johnson* v. *Sherman,* 15 Cal. 293; *Goodenow* v. *Ewer,* 16 Cal. 461; *Fogarty* v. *Sawyer,* 17 Cal. 589; *Bloodworth* v. *Lake,* 33 Cal. 264; and numerous other cases might be cited).

In the statement of this doctrine, so far as our information extends, there has been no express or implied limitation in its application to any particular form of mortgage. Nor are we aware that in those other States, which recognize a deed absolute on its face, given for the purpose of securing a debt, as a mortgage, and regard the title for all purposes, except

the security of the mortgagee, as being really and in fact in the mortgagor, any difference exists between mortgages in different forms. As we understand the matter, when it is once ascertained that a deed is a mortgage, the ordinary consequences of a mortgage attach, whatever the form may be, so far, at least, as the parties and those claiming under them with notice are concerned. The case of *Lane* v. *Shear*, before cited, affords a good illustration of the principle that the mortgagee no more takes a title, except in form, even when the deed is absolute on its face, than when the instrument is a mortgage in the usual terms. It was an action at law to recover a penalty under the Champerty Act. Lane had purchased a lot from one, Day, on credit, and gone into possession. He afterward leased it. He subsequently paid for the lot, but had not taken a conveyance, so the title still stood in Day. He borrowed two hundred dollars from defendant Shear, and as security for its payment, at his request, Day conveyed the lot to Shear by deed absolute on its face, in which deed Lane joined. Shear, however, in a separate instrument, executed a bond to Lane in the penal sum of eight hundred dollars, conditioned that upon the payment to him by Lane of two hundred dollars, with interest, in one year, he would convey the lot to Lane.

There was nothing on the face of either instrument, taken by itself, or the two considered together, from which the real nature of the transaction could be ascertained, and the facts, to connect the two instruments, and show that the whole was intended as a mortgage to secure a loan of two hundred dollars, were shown by parol. The bond was not a condition avoiding the deed upon payment—not a defeasance in form or substance. It was the ordinary bond to convey a title, which was apparently in the obligor. It was such a bond as was in ordinary use in sales of land on credit, by which the vendor of land, actually owned by himself, was accustomed to obligate himself to convey to the vendee on payment of the purchase money. And it was only by parol evidence

that the transaction was shown to be otherwise. The bond could not, of itself, operate as a transfer of title to the obligee on payment. It contemplated a conveyance in form. The two hundred dollars was paid in due time. On this state of facts the Court held that "the defendant, Shear, never had any other interest than that of a mortgagee in the premises in question, and that interest *was terminated or extinguished* on the 20th of October, 1823, by the repayment of the principal and interest of the money loaned by him to Lane." (1 Wend. 436.) It is further said: "If Shear had only the interest of a mortgagee in the premises, then no conveyance from him to Lane was necessary to restore to Lane the entire title. A mortgagee has but a chattel interest, the freehold remains in the mortgagor. (*Wilson* v. *Troup*, 2 Cow. 195; 6 Johns. 290; 11 Johns. 534; 15 Johns. 319.) Payment of the debt is an extinguishment of the mortgage. (4 Johns. 41.)  *  *  *  After the payment of the debt, and the consequent extinguishment of the mortgage, at all events, if not before, the possession was adverse as againt Shear. He had no legal or equitable interest in the premises; and this was more than a year previous to the conveyance to Sheldon." (4 Johns. 437.) If the conveyance from Day did not vest a title in Shear, and if no conveyance from him to Lane was necessary to divest Shear of any title after payment, then no title would have vested, and no conveyance been required, if no bond had been given, and the whole had been left in parol, for the bond was an independent instrument, which did not refer to, or purport to avoid the deed to Shear, but only obligated him, upon terms specified, to make a conveyance—do an affirmative act—himself. It only, in connection with other parol evidence, served to show that the deed was in fact made as security for money, and was, therefore in fact a mortgage. The same view is taken in an action to recover land upon a patent on a somewhat similar condition of title, in *Murray* v. *Walker*, 31 N. Y. 399. The same principle is declared when there was no similar agreement. (*Roach* v.

6

*Cosine*, 9 Wend. 232.) The same principle, that no title passes to a grantee, in this State, by a deed absolute on its face, without a defeasance or counter agreement in writing, where the object is to secure the payment of a debt, is directly established in *Johnson* v. *Sherman*, 15 Cal. 287. The assignment of a term was absolute on its face. There was no condition or defeasance in writing, and it only appeared by parol testimony that the transaction was designed as security for a loan, and was, therefore, a mortgage. After stating the character of a mortgage in England, and noticing the modifications in New York, the Court, by Mr. Chief Justice FIELD, proceed: "In this State a mortgage is regarded as a mere security, and not as a conveyance vesting in the mortgagee any estate in the land, either before or after condition broken. As a security for a debt, default in the payment does not change its character. Payment after default operates to discharge the lien equally with payment at the maturity of the debt. (Act concerning Conveyances, Sec. 40.) Nor can possession under the mortgage affect the nature of the mortgagee's interest; it does not abridge or enlarge his interest or convert what was previously a security into a seizin of the freehold; it does not change the relation of creditor and debtor, or impair the estate of the mortgagor, but leaves the rights and interests of the parties exactly as they existed previously. Possession taken by consent of the owner, or by contract with him, may confer rights as against third parties, but they are independent and distinct from any rights springing from the mortgage, from which they derive no support. In thus holding, we only carry the doctrine that a mortgage is a mere security for a debt to its legitimate and logical result. (*McMillan* v. *Richards*, 9 Cal. 411; *Nagle* v. *Macy*, 9 Cal. 428.)

"In England, as we have before stated, a mortgagee of a term out of possession is liable as assignee, because he is by the mortgage invested with the entire estate. In New York he is only liable when in possession, because until then he has a mere chattel interest, but is held liable after possession

taken, because then he is considered as having the title of the mortgagor. In *this State* he is not regarded *as ever having the title of the mortgagor until judicial foreclosure and sale. The title remains with the mortgagor, whether possession be taken or otherwise."* (15 Cal. 293.)

Thus it is directly held that in this State no title in reality passes to the grantee, *even by a conveyance absolute* in form, and without any defeasance when the purpose is security; or, in other words, that *all mortgages, whether in the usual form or absolute conveyances on their faces, stand upon the same footing in this respect, that neither conveys a title in fact.* We know of nothing in this State in conflict with this decision; on the contrary, the doctrine has been rigidly adhered to in all subsequent cases; as in *Polhemus* v. *Trainer*, 30 Cal. 687, and *Gay* v. *Hamilton*, 33 Cal. 688, in which the assignment was absolute on its face, but there was a separate counter agreement, not making the assignment void, but to reassign upon the payment of a certain sum of money, and requiring parol evidence to connect the transactions and show the object.

That an *innocent purchaser* for a valuable consideration from the apparent grantee in a conveyance, absolute on its face, in due form upon the records, although intended as a mortgage, without notice of its real character, *would be protected, there can be no doubt. The parties who executed and placed upon the record such a deed would be estopped, as to such innocent purchaser, from averring that the instrument is not such as it appears to be—such as their act represented it to be.* But this, we apprehend, affords no sound argument for overthrowing the doctrine as now established in this State.

Taking this point as established, is it competent, under our system, in an action which would have been an action *at law* under the old system, to show by parol evidence that a deed, absolute on its face, was given as security, and is, therefore, a mortgage?

In New York the decisions are uniform, we believe, in support of the admissibility of such evidence, till the case of *Webb* v. *Rice*, 6 Hill, 219. At all events, it was so held in

the modern cases of *Champlin* v. *Butler*, 18 Johns. 169; *Gilchrist* v. *Cunningham*, 8 Wend. 641; *Roach* v. *Cosine*, 9 Wend. 227; *Walton* v. *Cronly's Administrator*, 14 Wend. 63; *Ring* v. *Franklin*, 2 Hall, 1; *Swart* v. *Service*, 21 Wend. 36; and *Webb* v. *Rice*, 1 Hill, 606.    The latter case, however, is the one reversed by the Court of Errors, (6 Hill, 219,) by a divided Court, constituted largely of laymen, and is the only one in that State, which has fallen under our notice, against the principle.

The later case of *Hodges* v. *The Tenn. M. F. Ins. Co.*, 4 Seld. 416, was an action at law on a policy of insurance. There was nothing set up, either in the complaint, answer, or replication, upon which any affirmative equitable relief could be had in that action, nor was there any equitable defense set up, for the approval of the assignment upon fraudulent representations is a legal as well as equitable defense.    The case, as presented by the amended complaint, is simply this: Plaintiff sought to recover on the policy obtained by one Slamm, the owner of the land.    Slamm conveyed the premises to plaintiff by deed absolute on its face, but which plaintiff alleges was intended as a security, and assigned the policy as collateral security, which assignment defendants approved on the representation that the land was mortgaged, and the assignment made as collateral, whereas the conveyance of land turns out to be absolute.    Now, the legal liability of the insurance company depends upon whether the deed, absolute on its face, was in fact a mortgage, and not—what it purports to be—an absolute conveyance.    The only question is, whether, in an action strictly *at law*, it can be shown by parol evidence that the deed absolute on its face is intended for a mortgage, and the Court of Appeals holds that it can.    The opinion does not state so clearly as it might the exact ground of the decision.    It was not pretended that this is not an action *at law*, or that there is any issue other than one *at law*.    But the Court say: "The question, then, taking it most strongly against the plaintiff, is, whether in equity Slamm *might* have a bill to redeem

against Hodges, notwithstanding the deed was absolute on
its face" (4 Seld. 419)—not whether this was a suit in equity,
but whether Slamm *might* have a bill to redeem. And as
he might have a bill in equity, the case of *Webb* v. *Rice*, 6
Hill, 219, does not conflict with the proposition.

As the action was at law, and the Court did not overrule
the case referred to, it must have gone upon the idea, that,
as the party might formerly have had a bill in equity, and
introduced parol evidence in such suit, and as the distinctions
between law and equity are now abolished in practice, and
any relief may be granted in any case, which the facts justify,
the matters which might formerly be investigated in a suit
in equity may now, also, be inquired into in a suit *at law*.
That is to say, that rules of evidence and practice no longer
depend upon the forum in which the question arises. There
could be no other ground taken without directly overruling
*Webb* v. *Rice*, which the Court did not profess to do. Yet
it was not pretended that this was a suit *in equity*, or that
there was any one equitable issue in the case. The dissent-
ing opinion, also, assumed it to be a question arising at law,
for it held the question to be governed by *Webb* v. *Rice*, and
the dissent went on that ground. The view which it is here
suggested the Court must have taken with reference to the
applicability of the same rules of evidence to actions *at law*,
and *in equity* in New York, since the adoption of the code,
is expressly stated and adopted in the still later case of *Des-
pard* v. *Walbridge*, 15 N. Y. 374. This was an action at law
against a sub-tenant to recover rent. The plaintiff claimed
under an assignment of the term of the first lessee, absolute
on its face. And the question was, whether parol evidence
could be introduced to show that the assignment was a secu-
rity and the debt had been paid. The Court say:

" The assignment to the plaintiff being absolute in its
terms, it is said that parol evidence was inadmissible to show
that it was intended as security merely; and the case of
*Webb* v. *Rice*, 6 Hill, 219, is cited in support of this position.

It was held in that case that in an action *at law* parol evidence could not be received to show that a deed, absolute on its face, was intended as a mortgage. It *was conceded, however, that the rule was settled otherwise in equity.* In the case of *Hodges* v. *The Tennessee Insurance Company,* 4 Seld. 416, this Court held that the rule in equity continued the same since the case of *Webb* v. *Rice* as before. The only question, there-fore, upon this subject is whether the equity rule is applica-ble to the present case, *which is a purely legal action.* As, however, since the enactment of the Code of Procedure, a defendant may avail himself of an equitable as well as a legal defense in all cases, whatever may be the nature of the action, there would seem to be but little room for doubt upon the point. (*Dobson* v. *Pearce,* 2 Kern. 156; *Crary* v. *Goodman,* 2 Kern. 266; Code, Sec. 150, Sub. 2.) That a deed absolute on its face was intended as a mortgage, would, before the code, have been an equitable defense, because it could not have been proved at law. In order that it should now be made available in legal actions, as provided by the code, the evidence to establish it must be admitted in that class of actions." (2 Kern. 378.)

The matter was set up in the answer in this case, it is true, but it was to show that the title was not in the plaintiff. But it was a legal action, and the Court say: "That in order that it should now be made available in legal actions, as pro-vided by the code, the evidence to establish it must be admitted in that class of actions." (See, also, *Smith* v. *Beattie,* 31 N. Y. 544. This case may, however, be regarded as a suit in equity.) Thus it is now settled in New York, that, under the code, whatever the rule might have been before, parol evidence is admissible in actions *at law* as well as in equity, to show that a deed, absolute on its face, is, in fact, a mortgage.

In this State, the Court, in *Pierce* v. *Robinson,* 13 Cal. 117, upon an elaborate discussion of the question, with a view to "place the doctrine of this Court in harmony with the

*received doctrine of Courts of equity on this subject everywhere else,*" (13 Cal. 124–5,) hold that parol evidence is admissible in equity to show that a deed, absolute on its face, was intended to be a mortgage, and that such evidence is not restricted to cases of fraud, accident, or mistake in the creation of the instrument. The case did not require the Court to go beyond this. But in *Johnson* v. *Sherman,* 15 Cal. 287, the Court, as we read the decision, directly decide the question, and hold that, in this State, such testimony *is admissible at law,* as well as in equity. The action was to recover possession of the premises, and the rents accrued, subsequently to the assignment of the lease to defendant, Sherman. The lease was for a term of ten years, at a rent covenanted to be paid by the lessee of seven hundred and fifty dollars per month. The lessees borrowed money of the banking firm of Lucas, Turner & Co., of which firm Sherman was the manager, and assigned the lease to Sherman as security for the loan, but by an instrument absolute in form. The suit, it is true, ostensibly asked equitable relief, based upon an alleged fictitious assignment to Jeffries by Sherman. But the Court say: "Aside from this allegation, the facts set forth in the complaint *disclose only causes of action perfectly cognizable at law—a claim to the premises and a claim for back rents.* The *essential* allegation, upon which the whole *equitable relief* is sought, is *fully controverted* by the *answer, and is wholly unsupported by the proofs.*" (13 Cal. 290.) The Court, therefore, look upon the case, for the purpose of the questions decided, as an action *at law,* and determine them in their legal aspect. Yet it is said: "The admissibility of parol evidence to show that a conveyance or assignment absolute upon its face was intended as a mortgage, is no longer an open question in this State. After some fluctuation of opinion on the subject, it has been finally and definitely settled. Such evidence is admissible, not to vary the language of the instrument, but to explain the character of the transaction; not to ascertain the meaning of the terms of the instrument, but to show

the purposes for which the instrument itself was executed."
(See *Pierce* v. *Robinson*, 13 Cal. 116; 13 Cal. 291.)

It is true that *Pierce* v. *Robinson* is referred to as settling
the question. But the doctrine is held to be applicable to
this case, which, as we have before stated, was regarded for
the purpose of the decision, as an action at law. The ques-
tion arose upon an issue at law—upon the cause of action at
law. We regard the case, therefore, as directly holding,
that such evidence in this State, and under our system of
practice, is admissible *at law* as well as in equity. In *Cun-
ningham* v. *Hawkins*, 27 Cal. 605, an action to recover pos-
session of a mining claim, the question was directly presented
and decided on the authority of *Pierce* v. *Robinson*, and *John-
son* v. *Sherman*, and upon further reasons there stated. We
there said: "It is now settled in this State that parol evidence
is admissible to show that a deed, absolute on its face, was
intended to be a mortgage. (*Pierce* v. *Robinson*, 13 Cal.
116; *Johnson* v. *Sherman*, 15 Cal. 291.) Nor can the rule be
confined to cases that formerly were cognizable in equity
alone. There is but one form of action in this State, and
the same rules of evidence must be applied alike to all cases.
It may be that formerly the rule prevailed only in cases of
equity. But, however that may be, there is no distinction
in this State.

"Section two hundred sixty of the Practice Act provides
that ' a mortgage of real property shall not be deemed a
conveyance, whatever its terms, so as to enable the owner
of the mortgage to recover possession of the real property
without foreclosure and sale.' If the rule contended for by
the respondent prevailed, this provision of the statute would
be nugatory, for the reason that when the mortgage is, in its
terms—in form—an absolute conveyance, the mortgagor
would be prohibited from showing the real character of the
transaction. The position contended for by the respondent
would resolve the question into one of *pleading rather than a
question as to the competency of evidence.* But there is no equi-
table title to set up. The plaintiff, if he has any title at all, has

a legal title. A mortgage under our system, as between the parties, does not pass the legal title to the grantee. The title remains in the mortgagor until it is divested by a foreclosure and sale, whatever the terms of the mortgage may be." (27 Cal. 606.)

Upon the same point we held the same way in *Hopper* v. *Jones*, 29 Cal. 18. The same principle must have been recognized in *Polhemus* v. *Trainer*, 30 Cal. 687, for, although there was a written agreement to *reassign* upon the payment of a certain sum, it was a separate instrument, and required parol testimony to connect the two and show the object. Again, the same point was directly presented and decided the same way in *Gay* v. *Hamilton*, 33 Cal. 690, where we again say: "It is well settled in this State, that what appears upon the face of the papers to have been an absolute sale and conveyance, may be shown by parol evidence to have been intended as a mortgage." *Sears* v. *Dixon*, 33 Cal. 332, also recognizes the same doctrine.

The last six cases had the concurrence of all the Justices. Thus, for nearly nine years, the doctrine has been rigidly adhered to without a dissenting voice. We can perceive no good reason for overturning all these decisions now, and again unsettling the law upon a highly important practical question, which we had regarded as finally set at rest. Besides, although it is apparently but a rule of evidence, it may also have become a rule of property. Parties may have acted upon the idea, that deeds absolute in form could be shown to be mortgages by parol evidence, and placed themselves in a position where their property may be lost, or rights jeopardized. The remarks of Mr. Justice Selden, in *Bissell* v. *Mi. S. & N. Ind. R. Co.* are worthy of consideration in this connection. He says: "If questions which have been over and over again considered, and over and over again decided, are to be treated as still unsettled, then are we without any stable foundation of law or justice. The evils attendant upon setting legal principles afloat upon a sea of uncertainty and

7

doubt, and causing them to depend upon the fluctuations of individual opinion, are too obvious to need enumeration. Confidence in Courts is only to be retained by their exhibiting stability in their own decisions, and a becoming respect for those of other tribunals." (2 N. Y. 282.)

But we believe it to be now conceded that the rule in favor of the admissibility of parol evidence in equity is universally established, here and elsewhere, and this being so, if we never had yet decided the question, we should have no hesitation under our system of practice and statutory provisions in establishing the same rule in proceedings which would formerly have been *at law.*

The revised statutes of New York contain the following provision: "No action of ejectment shall hereafter be maintained by a *mortgagee* or his assigns or representatives for the recovery of the mortgaged premises." (2 Rev. Stats. N. Y., 312, Sec. 57.) Under this provision it was held by the Court of Appeals, that the plaintiff could not recover in ejectment upon the following state of facts: One Green purchased the land in dispute from the State, partly on credit, and received from the proper officer the prescribed certificate of purchase, showing the balance due, etc. He, afterwards, assigned the certificate to one, Stanford, who subsequently assigned it to the plaintiff, Murray, "authorizing and empowering him to take and receive a deed for the premises for his own use and benefit, but adding to the assignment that it was made 'to secure the payment of two hundred dollars,' etc." Stanford remained in possession, and the defendant entered upon title subsequently derived from Stanford. Afterwards the plaintiff paid the balance of the purchase money, and received a patent from the State, *absolute on its face.* It was held, however, that he was only a mortgagee; that from the fact of his taking in form an absolute title from the State—a third party—he was in no better position than he was with his assignment of the certificate of sale as a security from a party in whom the legal title had never vested; and that the patentee was within the foregoing pro-

vision of the revised statutes. Quoting Mr. Justice Sutherland in a former decision, the Court say: "The statute forbidding the action embraces, in terms, every description of mortgage which could previously have been made the foundation for an action of ejectment." (*Murray* v. *Walker*, 31 N. Y. 402.) Mr. Justice Wright says: "*A deed or conveyance, absolute* on its face, if really only intended to secure a debt, *is deemed*, in equity *and at law*, a mortgage, *though the defeasance is by parol.*" (31 N. Y. 403.)

Now, as against those claiming under Stanford, who, himself, never had the legal title, if there was in fact no title conveyed by the patent of the State to Walker, sufficient to enable him to maintain ejectment, it would be difficult to conceive of a case where a conveyance made for the purpose of security, would vest a title sufficient to justify a recovery under the statute in question. The fact that there is a defeasance in writing in the same, or a separate instrument, is not made the test. For the statute, as construed by the Courts, embraces "*every description of mortgage which could previously have been made the foundation of an action of ejectment;*" and it will not be pretended that a mortgage in the form of an absolute conveyance could not have been made the foundation of such action—or that such an instrument is in fact a mortgage.

Our Practice Act is still more specific and comprehensive than the statute of New York. Section two hundred sixty, as we have before seen, is as follows: "A mortgage of real property shall not be deemed a conveyance, *whatever its terms*, so as to enable the owner of the mortgage to recover possession of the real property without foreclosure and sale." This provision was adopted in full view of the fact, that mortgages were in common use, and recognized by the law of the land—a part of the general municipal law—whether enforced in a Court of law, or a Court of equity, in various forms—some with a condition of defeasance in the instrument itself; others, in a separate instrument; and still others without any defeasance in writing at all—and the provision

covers all these cases, "*whatever*" the terms of the instrument. It intended to put them all on a common footing, and treat them, as the parties intended, as securities for the performance of the thing to be performed, and not as transferring either the title, or right of possession, without an express agreement, that possession might be taken by the party secured.

The statute says, no recovery of possession shall be had upon a mortgage, "*whatever its terms.*" The statutory test of the right to recover is, whether the instrument is, in fact, a mortgage, without regard to its form, and not whether the object of the instrument is disclosed by the writing, or any other writing.

In *Fogarty* v. *Sawyer*, Mr. Chief Justice FIELD says: "We * * * are clear that the language, '*whatever its terms,*' was only intended to control the *terms of grant, bargain, and sale* generally employed in mortgages. The common form of such instruments in use in this State is that of an absolute conveyance, with a condition underwritten that it is executed as security, and shall become inoperative and void upon payment of the debt; and the statute is directed to the *language* of *alienation* and *transfer*, declaring that the instrument, *whatever terms* it may use, *shall not be deemed a conveyance so as to enable the owner to recover possession* without foreclosure and sale. As a result flowing from the statute, no authority can be derived from the mortgage alone to take possession, *even though terms* are used which in other instruments *would convey both title and possession.*" (17 Cal. 593; see, also, Ib. 592.)

The provision under consideration, prohibiting a recovery, has reference to an *action at law*, and it necessarily assumes that the fact which shall defeat the recovery *may be shown in the very action in which the recovery is sought.* If it cannot be thus shown, then as to a large number of the cases embraced within the provisions of the Act the purpose of the Legislature is defeated. But Courts of equity exercise no arbitrary powers. They simply administer, in forms peculiarly their

own, one branch of the municipal law.   There must be a right recognized by the municipal law before even a Court of equity can enforce it.   Their mode of proceeding was different.   But now, under our system, there is no difference in the forms of proceeding.   A party states the grounds of his complaint, or defense, and if the facts give him a right of action or defense, recognized by any branch of the municipal law, the same Court gives it effect, whether it would have been heretofore a question of legal or equitable cognizance.   There can be, in our judgment, no possible sound reason for adopting a different rule of evidence, under our system, to prove the same state of facts, whether the right arising out of that state of facts, when proved, would have been heretofore enforced in one form or the other, and we find nothing in our Practice Act countenancing any distinction in this respect.   If there can be any question at all, it must be a question of pleading, and not as to a rule of evidence.   Suppose Smith, to secure the payment of a loan of one thousand dollars for one month, conveys to Jones, by a deed, absolute on its face, land of the value of ten thousand dollars, and at the end of the month pays to Jones the full amount due.   The law of the land says the transaction is in reality a mortgage, and that it has been fully paid and satisfied; also, that no recovery can be had upon the mortgage, whether satisfied or not.   But Jones brings an action against Smith to recover the land, and alleges title.   He does not state what title he relies on, but only says he is seized in fee. Smith does not know what title he will be called upon to meet till it is developed in the evidence.   All he can do upon the case alleged is to take issue by denying the title.   That which is first developed in evidence can only be met by counter evidence.   Upon the trial Jones offers his deed from Smith in evidence, and rests; whereupon Smith offers to show, by parol evidence, that he borrowed one thousand dollars, and executed that deed as security, and that he has paid the money.   The Court, on objection, excludes it, on the ground that parol evidence is inadmissible *at law*, and Jones

recovers contrary to the express provision of the statute. Smith immediately turns round, sues Jones in the same Court, alleges the making of the loan, the execution of the deed to secure it, its payment, and asks that Jones be adjudged to reconvey, and Jones joins issue. At the trial, before the same Judge, he offers his parol evidence to prove the same facts before offered, and it is admitted because he is *now proceeding in equity.* He obtains his judgment and a reconveyance in pursuance of it, and then sues Jones again, and upon his new deed recovers possession of the land which was before wrongfully recovered from him. Or, if it be admissible, when it cannot be known from the complaint that this deed will be in question, he may in Jones' action assume that Jones will rely on his deed, aver the same facts as an equitable defense, and then be permitted to prove it, and protect his possession, because he is now proceeding *in equity in an action at law.* Is not the absurdity of any such distinction in the application of a mere rule of evidence, under our system, sufficiently manifest from a bare statement of the proposition? Can it be necessary to add anything in the way of argument?

We can conceive of but one inconvenience likely to result from the doctrine here maintained, and that arises from the different terms prescribed by the Statute of Limitations for barring an action to foreclose the mortgage and an action to recover the land. A mortgagee in possession, either wrongfully or by consent, would be barred of his action to foreclose in four years after his money becomes due, while the action to recover the land by the mortgagor would not be barred till five years. A mortgagee in possession might thus be lulled by his possession, under a deed absolute on its face, into a false security, and allow the bar to attach upon his action to foreclose, while the right of action to recover possession would still remain. But if so, this, like all other cases barred by the statute, would be the result of negligence, design, or inattention to the operation of the law. Besides, if this be conceded to be an inconvenience, the same incon-

venience would result to another class of cases from the other view. Thus, in the case of Smith and Jones, before assumed as an illustration: Suppose Smith, relying upon his possession and the fact of payment and satisfaction, should not obtain a reconveyance from Jones till after the expiration of four years; Jones' deed might not even be on record, and he might consider himself entirely safe. His equitable right of action would be barred. He would no longer be able to maintain his action to compel a reconveyance, while Jones' right to recover possession on his deed would be still in existence. Jones could now recover at law, because, *at law*, Smith could not prove the character of the transaction by parol, and show it to be a mortgage, and he could not turn it into an equitable proceeding, because he has no "*live* equity" upon which to build. (*Carpentier* v. *Oakland*, 30 Cal. 439.) Thus the inconveniences of the latter view are quite as formidable as of the former. It would be well, perhaps, if the Legislature should modify the Statute of Limitations in such cases, so that the bar should attach in each action at the same time, but it has not yet done so, and, as the law now stands, parties in the situation supposed must rely upon their own diligence for protection.

We all know, as a matter of fact, that conveyances and assignments, absolute on their face, for purposes of security, are very common; and that such have been almost time out of mind regarded and enforced, in Courts of equity, at least, as mortgages. The principle is as well known, and as thoroughly imbedded in the minds of the people as any other rule of property. Then why, since this form of security is common in the transactions of business, jeopardize the rights of those who are, to a great extent, at the mercy of the creditor, and are compelled to adopt it by introducing, or reviving, if it before existed, an obsolete, arbitrary distinction in the application of a rule of evidence, based upon the fact that certain remedies were once pursued in different tribunals, when, if it ever had any principle to support it, there is no longer any sound reason upon which it can rest?

If there is any error in principle, it is the adoption of the rule in Courts of equity, and not in' following it when universally established in such Courts, by other Courts wherein all distinctions in forms are abolished, and any relief to which a party is entitled may be had in one action. That there was a necessity for admitting such evidence is apparent from the fact that Courts of equity everywhere, sooner or later, adopted the rule admitting it, and it is not yet apparent that human nature has become so far improved and perfected as to obviate that necessity.

Both upon principle and authority, therefore, we think parol evidence admissible in this State, at law as in equity, to show that a deed, absolute on its face, was given as security for money, and is, in fact, a mortgage, and we affirm the former decisions on that point.

We will add here that the authorities from Massachusetts and such of the New England and other States as have followed Massachusetts, are in a great measure inapplicable to the question, as presented in this State, for the reason that the whole doctrine relating to mortgages in those States is different. There the old common law doctrine, but slightly modified, still prevails, that a mortgage, even in the ordinary form, is a conditional conveyance of the land, which becomes absolute, *at law*, upon breach of condition—that it passes an estate in the land, and does not merely create a lien. A recovery of possession may be had on it. (*Edwards* v. *Farmers' F., M. and L. Co.*, 21 Wend. 490.) Of course, such a departure as we, following the lead of New York, have made from the old doctrine of mortgages, is attended by important consequences. The form of the decree approved in *Perrine* v. *Dunn*, 4 Johns. Ch. 140, to our minds, affords no argument against the position we have taken; for the decree in that case was upon a mortgage *eo nomine*, (see same case, 3 Johns. Ch. 508, for statement of the facts,) and is as applicable to one form of a mortgage as to another. But the decision was made when strict foreclosures were authorized, and before the doctrine as to the character of mortgages which now

prevails in this State had been fully developed and carried, by the aid of legislation, to its legitimate results.

The judgment and order denying a new trial must be reversed, and a new trial had, and it is so ordered.

By the Court, SAWYER, C. J.:

Rehearing denied. Let the foregoing order be entered.

Mr. Justice RHODES delivered the following dissenting opinion, in which Mr. Justice CROCKETT concurred:

The complaint is in the form generally used in actions of ejectment. The answer denies all the allegations of the complaint, except that of the defendant's possession; and it also sets up title in the defendant, but this amounts to no more than an argumentative denial of the plaintiff's title. The defendant claims title through a deed from Turman, and the plaintiff claims title through a subsequent deed from Turman, and insists that the deed to the defendant was intended by the parties thereto as a mortgage, and parol evidence was admitted, against the objection of the defendant, to show that fact.

Two questions arise upon this state of facts:

First—Does an absolute deed, which is shown by parol evidence to have been intended as a mortgage, convey the legal title to the grantee?

Second—Is parol evidence admissible, for this purpose, at law?

In many of the States, the Courts at law have adopted the rule which obtains in equity, in the construction of mortgages, and they accordingly treat them as mere securities for the payment of money, or the performance of some other act, the interest passing to the mortgagee being regarded as a lien upon the real estate. They pass no interest or estate in the land, except the lien, and the lien is an incident to the

8

debt or obligation which is thereby secured. (*McMillan* v. *Richards*, 9 Cal. 409.) In harmony with this doctrine, it was always held in this State that payment of the debt secured by the mortgage discharged or released the mortgage, and no reconveyance of the mortgaged premises was necessary. The definition of a mortgage as known at common law—an estate defeasible by the performance of a condition subsequent—does not correctly describe that instrument, as it is interpreted in this and most of the other States. This result has been attained by disregarding the form of the instrument and the words of conveyance, and looking at the real nature of the contract. The formal technicalities that at an earlier day embarrassed the Courts of law, gave way to the true meaning of the instrument, and the mortgage was considered, as in equity, not as an estate in fee, but as a lien, created for the purpose of security. In New York the cases have not been uniform, but this doctrine is sustained by a decided preponderance of authority. (*Jackson* v. *Willard*, 4 Johns. 41; *Hitchcock* v. *Harrington*, 6 Johns. 290; *Collins* v. *Torry*, 7 Johns. 278; *Coles* v. *Coles*, 15 Johns. 319; *Lane* v. *Shears*, 1 Wend. 433.)

The doctrine was not carried to its legitimate results in all respects. The mortgagee, after forfeiture, was permitted to recover the possession of the mortgaged premises, though it involved the absurdity of a recovery upon that which was conceded to be a mere security. But such had been the practice before the equitable rule was adopted by the Courts of law. It was for the purpose of correcting this practice that the provision of the revised statutes was adopted, that no action of ejectment should be brought by the holder of the mortgage for the recovery of the mortgaged premises; though, as we have said, it would follow as a logical sequence from the doctrine mentioned, that the mortgage alone would not entitle the mortgagee to the possession. In *Stewart* v. *Hutchins*, 13 Wend. 485, that provision was under consideration, and it was held that its object was to cut off one of the

three remedies theretofore enjoyed by the mortgagee; but it was not regarded as changing the character of the mortgage.

The statute of this State, though differing in its phraseology from that of New York, is substantially the same. Section two hundred and sixty of the Practice Act provides that "a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale." This section did not affect the real nature of the mortgage, nor did it cut off any remedy that mortgagees had previously enjoyed in this State; and if it accomplished anything, it was only by declaring the law, so as to preclude a recovery of the possession of the mortgaged premises, upon an instrument that did not confer the right of possession. It destroyed in this State the force of the authorities which hold that the owner of the mortgage may recover the possession of the mortgaged premises. In *Fogarty* v. *Sawyer*, 17 Cal. 593, it was held that the object of the section was "to control the terms of grant, bargain, and sale, generally employed in mortgages,   *   *   *   and the statute is directed to the language of alienation and transfer." It was not intimated that the statute worked a change in the nature of a mortgage; and it may safely be said that the Court were not of the opinion that any such change resulted from the operation of the statute, for the distinguished jurist who delivered the opinion in that case—Mr. Chief Justice FIELD—also delivered the opinion in *McMillan* v. *Richards*, and he has uniformly held that the title to the mortgaged premises remains in the mortgagor.

The mortgage we have been considering is one made in the usual form, containing words which, by themselves, import an alienation and transfer of the title to the premises, and also a *defeasance*, by which it is provided that the instrument shall be void upon the performance of the condition mentioned. Does it follow that no mortgage transfers the title or right of possession, because those of the kind referred to do not have that effect?

It is not the policy of the law to prevent parties from making such contracts, in respect to the title or possession of the mortgaged premises, as they please, nor does the statute have that effect. It was accordingly held, in *Fogarty* v. *Sawyer*, that there is nothing in the law of mortgages in this State which prevents the mortgagor from investing the mortgagee with power to sell the premises, and pass the title to the purchaser, upon a breach of the condition of the mortgage, without a judgment of foreclosure. The mortgagor may transfer to the mortgagee the possession to be held until a breach of the condition; or, for the same purpose, he may convey to a trustee either the title or the possession of the premises. If this be so, what reason is there, whether it be such as is founded on considerations of public policy or statutory provisions, which forbids the owner of lands from transferring to his creditors the legal title, if they deem that the best mode of affording the requisite security? The reasons that would forbid such a transfer would also forbid a transfer of the possession to a mortgagee, or of the title to a trustee. This will not infringe upon the doctrine that a mortgage, without any special covenants as to title or possession, does not pass either the title or the right of possession of the mortgaged premises.

The difference between an absolute deed and a mortgage consists in the defeasance, which is an essential part of the latter. It was the defeasance which had the effect, first in equity and afterwards at law, of restricting the operation of the words of alienation, so that the title did not pass to the mortgagee. In the absence of a defeasance, the words of conveyance being without qualification or restriction, must have their usual signification, and the conveyance of the legal title is the necessary result of their operation. Whatever may be the effect of a parol defeasance in equity, it is clear that it cannot *at law* operate as a defeasance of a deed of conveyance. (*Cutler* v. *Dickinson*, 8 Pick. 386; *Flagg* v. *Mann*, 14 Pick. 467; *Scituate* v. *Hanover*, 16 Pick. 222; *Flint*

v. *Sheldon*, 13 Mass. 443; *Eaton* v. *Grew*, 22 Pick. 526; 1 Wash. Real Prop. 480.)

In considering transactions in which it is alleged that the deed was executed by way of security, Courts of equity have often discussed and decided the question whether an absolute deed may be *turned* into a mortgage. The question assumes that the deed transfers the title at law. When the evidence satisfies the Court that the transaction was intended as a mortgage, and the grantor is permitted to redeem, the grantee is ordered to reconvey the premises. This require- ment is necessary only on the theory that the absolute deed, intended as a mortgage, did, in fact, transfer the title. The Court, in such case, requires the plaintiff to redeem within a specified time, otherwise that the bill be dismissed; and upon the bill being dismissed, the judgment is a bar to another action to redeem. (*Perine* v. *Dunn*, 4 Johns. Ch. 140.) It would be difficult to regard this as a penalty for a default on the part of the plaintiff, if the title remained in him, for his failure to redeem would not divest him of the title, and his default in paying the sum found due would leave him just in the position in which he stood before he commenced his action. And, indeed, upon the theory that the title was in him, he might safely await the operation of the Statute of Limitations to discharge the lien, if the other party did not sue for the recovery of his debt within the statutory period.

It will be admitted on all hands, that if a third person purchase the premises and take a conveyance from the grantee, in good faith, for a valuable consideration, and without notice of the facts relied upon to convert the first deed into a mortgage, he will acquire the title to the premises. No question arising under the Registration Act is involved in the supposed case. If this be true, the first deed must necessarily have passed the title, for a deed cannot pass the legal title *unless it is held by the grantor*, except in cases falling within the provisions of the Registration Act.

If the purchaser had notice that the deed was intended as

a mortgage, he still would take the legal title, but subject, of course, to the claim of the first grantor. That the interest of the latter is an equitable interest in the lands is very clearly shown by the fact that Courts of equity, both in England and the United States, have taken cognizance of those claims in a multitude of cases, and their jurisdiction will not be questioned, and they are the only tribunals competent to administer adequate relief. There are a few cases in New York in which the rights of the parties were determined in Courts of law, but they were overruled in *Webb* v. *Rice*, 6 Hill, 219. The grantor, seeking relief, relies upon an equity superior to the deed, and alleges that the real intention of the parties is independent of the one expressed in the deed, and prays that the deed may be turned into a mortgage, and that he may be permitted to redeem. A case of that complexion clearly falls within the equitable jurisdiction. The interest of the grantor being equitable in its character, the legal title, passing by the deed, remains in the grantee and his assigns, until the Court declares the deed to have been intended as a mortgage, and the grantor redeems according to the terms of the decree. Notice of the equitable title of the first grantor does not impair the effect of the second deed, as a conveyance of the legal title. It would be absurd to hold that notice kept on foot an *equitable interest* while the party entitled to its benefit held the legal title.

The question we have been discussing was not involved in *Lodge* v. *Turman*, 24 Cal. 385. In that case, suit was brought on a promissory note, and the defendants answered, among other things, that the note was paid by the execution of the conveyance of Turman to Lodge—the deed, under which he claims title in this action. The defendants, in making their case, proved that the deed was intended as a mortgage, and the principal question discussed was, whether parol evidence was admissible to show that a deed, absolute on its face, was intended as a mortgage, and it was held admissible. The only authorities relied on are *Pierce* v. *Robinson*, 13 Cal. 125, and Will. on Equity, 429—in each of which it is said that such evi-

dence is admissible *in equity.* The question whether the legal title passed, admitting the conveyance to have been intended as a mortgage, was not considered. Upon the new trial in that cause the Court found that the conveyance was not intended as a mortgage, but was executed in payment of the note. The language of Mr. Justice CURREY, in delivering the opinion of the Court in that case, may be repeated here with marked propriety in support of one of the positions already taken. He says: "The right of the mortgagor in such a case to redeem the property by due performance of the condition, on his part to be performed for the purpose, is an incident, as between the parties to the transaction, inseparably connected with the mortgage." It would be useless to insist upon that right unless by its exercise he was able to reinvest himself with a title which he did not then hold. He might well forego the privilege of redeeming if the consequences of a failure to redeem within the period prescribed by the Statute of Limitations would be that he would hold the land discharged of the lien or claim of his creditor.

We are aware that *Cunningham* v. *Hawkins,* 27 Cal. 603, is opposed to the views we now express, and it is because of the decision in that case that we have discussed the question at such length. The action was ejectment, and the question arose upon the admissibility of parol evidence, offered by the plaintiff, to show that the conveyance was intended as a mortgage; and we held that the evidence was admissible, and that it was admissible at law as well as in equity. The latter position will be hereafter noticed. It was considered that section two hundred and sixty of the Practice Act applies to all mortgages—not only to legal mortgages, but also to those which are declared or made such by Courts of equity, by turning absolute conveyances into mortgages; and it was held that the plaintiff, if he had any title at all, had the legal title, and that there was no equitable title to be set up by him. This rests upon the ground that that section operates upon the title, as between the mortgagor and mortgagee, so that it remains in the mortgagor, whatever may be

the character of the mortgage · or the nature of the transaction out of which the mortgage relation grows.

A defeasance must be of as high a nature as the instrument which it is designed to defeat. (1 Wash. on Real Property, 480, and note; 1 Hilliard on Mort. 35.) This is the rule at law. A defeasance of that character, and the deed with which it is united or coupled, constitute a legal mortgage; while a defeasance of a lower grade and the deed will amount to an equitable mortgage. The mortgagor, in the latter case, must seek relief in equity, the title in the meantime remaining in the mortgagee. This position must be true, unless it can be shown that the title may be defeated at law by matters resting in parol.

Some portion of the reasoning in *Johnson* v. *Sherman,* 15 Cal. 287, is opposed to our conclusion upon this question; but the case, in one respect, lends it strong support. The Court treated the assignment of the lease to Sherman as a mortgage, and while relieving him from responsibility for the rents, while he held the lease, on the ground that he was the mortgagee, and as such was not liable for the rents, it was *distinctly held* that after his assignment to Jeffries he was not liable for the rents, because the effect of the assignment was to discharge him from all subsequent breaches, both as regards rents and other covenants. There is no pretense that the debt to Lucas, Turner & Co., to secure which the lease was assigned to Sherman, was assigned to Jeffries, but, on the contrary, the latter is treated throughout the case as a pauper, and of course could not be regarded as a *bona fide* purchaser. If Sherman's relation to the lease was that of a mortgagee only—that is to say, the relation he would have occupied had the lease been mortgaged to him in the usual form—his assignment of the mortgaged property, without an assignment of the mortgage debt, was nugatory. There is no conflict among the numerous authorities in this Court on this point. But as the Court held that he did in fact assign the lease, he must have held the *legal title,* for that was the

*only* interest he had the capacity to pass, without an assignment of the debt.

The rule in England, and in most of the United States, forbids the admission in an action at law of evidence to show that an absolute deed was intended as a mortgage. (2 Phil. on Ev., C., H., and E. Notes, note 487.) In New York the authorities are conflicting. In *Roach* v. *Cosine*, 9 Wend. 227; *Walton* v. *Cronly*, 14 Wend. 63; *Swart* v. *Service*, 21 Wend. 36; *Webb* v. *Rice*, 1 Hill, 606, it was held admissible; but in *Webb* v. *Rice*, 6 Hill, 219, in the Court of Errors, those cases were overruled. The question again arose, in *Despard* v. *Walbridge*, 15 N. Y. 378, and it was held that such evidence was admissible, both at law and in equity, on the ground that *under the code* a defendant in an action at law may avail himself of an equitable as well as a legal defense.

The solution of the first question is decisive of this. If the interest remaining in the grantor, after the execution and delivery of the absolute deed, is the legal title, the evidence is clearly admissible at law; but if it is an equitable interest, the evidence is inadmissible, unless the party, relying on the fact that the deed was intended as a mortgage, sets up that fact in the pleadings. That would constitute an equitable defense, if the grantor is the defendant; and if he is the plaintiff, it would constitute, or form a part of, a cause of action in equity. In this view, the decision in *Despard* v. *Walbridge* is clearly right in holding that the evidence is admissible, either at law or in equity—that is, when the pleadings tender an issue upon the fact to which the evidence relates. The necessity of pleading such fact is forcibly stated by Mr. Justice Bronson, in his dissenting opinion in *Swart* v. *Service*, 21 Wend. 36.

The distinction between the qualities of a mortgage in form and an absolute deed intended as a mortgage are not merely theoretical, but are full of practical consequences. The great object of the Act providing for the recording of deeds and other instruments affecting real estate, is to com-

9

pel those claiming a priority of right through such instru-
ments to make the record speak the truth and show the real
nature of their title or interest. It is designed that the record
shall be such that all persons may resort to it, to ascertain
the true condition of land titles. Subsequent purchasers and
incumbrancers are charged by the record with notice of the
instruments recorded; but it would seem the height of
absurdity to charge them with notice of the contents of an
instrument which is not what it purports to be. The statute
provides that deeds and mortgages shall be recorded in sepa-
rate books, and in *Dey* v. *Dunham*, 2 Johns. Ch. 189, it was
held that a deed absolute on its face, and an agreement that
operated as a defeasance, ought to have been recorded *as a
mortgage*, in order to protect the land against the title of a
subsequent purchaser. A deed with a parol defeasance can-
not be recorded as a mortgage, under the provisions of the
statutes of this State. The Recorder must ascertain the
character of the instrument from inspection. He is not
empowered to hear testimony and determine judicially what
the intention of the parties was in the execution of the
instrument. The record, if the deed does not transfer the
title, is thus made to impart notice of a falsehood.

When the grantor pays the debt, must the grantee recon-
vey? Under the opposite construction he ought not, for he
has nothing in the lands—not even the naked title. The
record, therefore, cannot show the true state of the title, and
the owner, until the Statute of Limitations comes to his
relief, is subject to the uncertainties attending the production
of parol evidence.

In nearly all cases of this character the contest is over the
question whether the transaction accompanying the execution
of the deed amounts to a mortgage, or to a conditional sale;
and it will be readily seen that the grantee, who was justified,
from all the facts relating to the transaction, in considering
it as a contract to reconvey the premises, might lose the lands
in an action brought by the grantor, after an action for the
recovery of the money was barred by the Statute of Limita-

tions, without any fault on his part, but because the only witnesses who could then be procured misapprehended the conversation of the parties, or imperfectly recollected it at the time of the trial.

The first section of the Act concerning conveyances provides that "conveyances of lands, or of any estate or interest therein, may be made by deed, signed by the person from whom the estate or interest is intended to pass," etc. The only mode in which lands, or any estate or interest therein, can be conveyed by one person to another is by deed. The deed of the owner of lands transfers the title, and neither reason nor authority will justify us in breaking in upon the uniform operation of the rule, by allowing, as an exception, a deed absolute on its face, and in the exact form that the parties intended, but which is shown by parol evidence to have been executed to secure the payment of a debt.

In our opinion, a rehearing should be granted.