PALMER (GUIDET v.). See Case No. 5,859.

PALMER (HASBROOK v.). See Case No. 6,-188.

---

## Case No. 10,693.

### PALMER v. LOW et al.

[2 Sawy. 248.] [1]

Circuit Court, D. California. Oct., 1872.[2]

MEXICAN LAND GRANT — LIMITATION — ADVERSE POSSESSION—CALIFORNIA STATUTE—DEFENSE.

1. A grant made by an alcalde of San Francisco, after the transfer of California to the United States, is a Mexican title within the meaning of the proviso to the sixth section of the statute of limitations of the state of California, as amended in 1855.

2. The claim of the city of San Francisco to the pueblo lands, not having been finally confirmed on the eighteenth of April, 1863, the statute of limitations had not commenced to run at that date against a party claiming title under an alcalde grant, to a lot within the limits of the pueblo.

3. Where the plaintiff, in an action to recover land, relies upon title acquired by virtue of an adverse possession for the period prescribed by

¹ [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

² [Affirmed in 98 U. S. 1.]

the statute of limitations, but alleges his seizin generally in his complaint, without setting out the statute, or the nature of his title, the defendant need not plead an exception to the statute upon which he relies, but may upon the trial, show by evidence that he is within the exception without pleading it.

4. The word "defense," in section 6 of the statute of limitations of California of 1863, refers to the same cases as the word "defense" in the proviso to section 7 of the statute of limitations of 1855.

[This was an action by Daniel Palmer against Joseph W. Low and others.]

Barstow, Stetson & Houghton, for plaintiff.

Houghton & Reynolds, for defendants.

SAWYER, Circuit Judge. Loring and Jones entered upon one hundred vara lot, No. 39, in the city of San Francisco, embracing the premises in question, in the year 1851, or 1852, inclosed it, and built a house thereon. The plaintiff deraigns title from them. Plaintiff and his grantors were in the adverse possession of the premises from the entry of Loring and Jones at the date mentioned till ejected by defendants May 8, 1867, under a writ of possession issued in the case of Donner v. Palmer [45 Cal. 180], to which suit neither the plaintiff nor either of his grantors was a party. The defendants hold the title thereto under a grant from George Hyde, alcalde, dated July 19, 1847, to George Donner, and the Van Ness ordinance, the act of the legislature of California of March 11, 1858, and the acts of congress of July 1, 1864, and of March 8, 1866, confirming said title. St. Cal. 1858, p. 53; 13 Stat. 333; 14 Stat. 4.

The plaintiff claims that the adverse possession in himself and his grantors from 1851 or 1852, till his said ouster by defendants, May 8, 1867, vested in him a perfect title under the statute of limitations, upon which he is now entitled to recover, and cites Arrington v. Liscom, 34 Cal. 381, and Cannon v. Stockmon, 36 Cal. 540, in support of his position.

The claim of San Francisco to the municipal lands within its boundaries had not been finally confirmed "by the government of the United States, or its legally constituted authorities," at the date of the passage of the amendment to the statute of limitations, April 18, 1863, or of said act of congress of July 1, 1864.

Under the proviso to section 6 of the statute of limitations, as amended in 1855 [St. 1855, p. 109], the statute did not begin to run against parties claiming title under Spanish or Mexican grants, until their final confirmation by the United States government, or its legally constituted authorities. This act was in force till superseded by the amendments passed April 18, 1863. As there had been no final confirmation by the United States government, or its legally constituted authorities, of the claim of the city

to its municipal lands on April 18, 1863, the statute of limitations, at that date, had not begun to run against the defendant's title under his alcalde grant, if that grant is a Spanish or Mexican title, within the meaning of the said proviso. That it is such title there can be little doubt. The pueblo derived its title from the Mexican government, and that title required confirmation by the board of land commissioners in the same manner as private grants; and the grantee of the alcalde obtains his title through the pueblo, or else from the alcalde through powers conferred upon him by the laws of Mexico. It has already been judicially determined in this court by Mr. Justice Field, of the supreme court, that such grants are within the exception of said proviso. Montgomery v. Bevans [Case No. 9,735]. See, also, Merryman v. Bourne, 9 Wall. [76 U. S.] 602. The statute, then, had not commenced to run against defendant's title at the date of the passage of the act of April 18, 1863.

As to all the cases in respect to which the statute had not commenced to run at the date of the passage of that act, the act gave five years from the date of its passage before the bar of the statute should attach. St. 1863, pp. 325, 326, §§ 1, 6. The earliest day, therefore, at which the statute could begin to run against the defendant's title was April 18, 1863, and the bar of the statute would not attach till five years thereafter, or April 18, 1868. The defendants entered and dispossessed the plaintiff on May 8, 1867, or nearly a year before the time limited expired, and they have ever since continued in possession, claiming under their title. It follows, that no title had vested in plaintiff under the statute of limitations by virtue of his long adverse possession at the date of the entry of the defendants under their title, and the plaintiff has shown no title other than a naked possession, and this cannot avail against the real title exhibited by defendants, who are in possession under it. The plaintiff further insists that the general statute of limitations is five years; that the defendants rely on an exception of claimants under Spanish grants, and that they cannot show themselves to be within the exception without pleading it. If it be conceded that it is necessary, generally, to plead an exception relied on to take the case out of the general provisions of the statute, the rule is clearly inapplicable to this case. The plaintiff himself did not set up the statute as the basis of his title. He simply alleges his seizin in the ordinary way, before and at the date of the ouster, without setting out his title. He did not himself plead the general statute. Concede it not to be necessary for him to plead the statute himself in order to entitle him to show title by adverse possession under the statute, and it would seem to follow that the defendants should not be held to a stricter rule than the plaintiff. If the plaintiff does not set out his title, the defendant has no opportunity to meet it by plea. If the plaintiff does not set up the statute as the basis of his title, the defendant cannot know that he relies on it, nor be required to meet it by pleading the exception upon which he relies. The plaintiff's title being for the first time developed in the evidence, and not in his pleadings, it is admissible for the defendant to meet it by evidence. As a general rule, matter of estoppel must be pleaded. In Jackson v. Lodge, matter of estoppel was admitted without pleading, and the court say upon the question, "the matter of estoppel was properly in evidence; for the defendant upon the case made by the complaint, was not called upon and had no opportunity to plead it." The plaintiff did not set out his title. It was only developed in the evidence, and, therefore, could only be met by counter evidence. 36 Cal. 38, and authorities cited; Lain v. Shepardson, 23 Wis. 224, 228.

One more point earnestly pressed by plaintiff is so absurd in its consequences, that it would not require notice, but for the awkward manner in which the word "defense" is used in the sixth section of the act of 1863. It is not very apparent from the reading of section 6 alone, to what the word "defense," as therein used, is intended to apply. The proviso is as follows: "Provided further, that any person claiming real property, or the possession thereof, or any right or interest therein, under title derived from the Spanish or Mexican governments, or the authorities thereof, which shall not have been finally confirmed by the government of the United States, or its legally constituted authorities, more than five years before the passage of this act, may have five years after the passage of this act, in which to commence his action for the recovery of such real property, or the possession thereof, or any right or interest therein, or for rents or profits, out of the same, or to make his defense to an action founded upon the title thereto."

It is insisted that, as this action to recover the land was not commenced till more than five years after the passage of the act of April 18, 1863, the defendants in possession under an otherwise valid title cannot set up that title to protect their possession in an action to recover the land by a party who has no title, but who was once in possession as a trespasser upon their title, because it is a Spanish title, and the statute says the claimant under a Spanish title may have "five years after the passage of this act in which to * * * * make his defense to an action founded upon the title thereto;" that as he may have five years within which to make his defense, by implication he cannot make a defense after the lapse of five years. It is impossible to believe that the legislature intended the construction of this

proviso claimed by plaintiff. If so, then, no man in possession of lands holding under a valid Spanish or Mexican grant finally confirmed, more than five years ago, can use his title as a defense to any action hereafter brought against him to recover the possession, and this would now include a large portion of the lands in this state. Such a construction is simply preposterous. The meaning of the clause is very obscure, at best. If read according to the natural grammatical arrangement of the language, it is the "action founded upon the title thereto" to which a party may make his "defense" within five years, not his "defense founded upon the title thereto," "to an action" founded upon some other title. If this is the true construction, then the clause has no application to this case, for here the "defense," and not "the action," is founded on a Mexican title. Although this is clearly the grammatical construction, it does not seem as though it could be the idea designed to be conveyed, for in that case, the provision would be, that any party claiming under a Spanish title must make his defense within five years to any action brought against him founded upon the same Spanish title, and would apply to no other cases, which seems little better than nonsense. In order to give a proper construction to this section, it will be necessary to read and consider it in connection with sections 1 and 2 of the same act, amending sections 6 and 7 of the prior act, and sections 6 and 7 as they stood in the act of 1855; also, as they existed in the act of 1850 [Stat. 1850, p. 343] before amended in 1855. Section 7 of the statute of limitations, as adopted in 1850, has always been obscure. The obscurity resulted from an attempt to modify the language of the statute from which it was copied, so as to adapt it to the different conditions in this state of the law to which it related. The supreme court of California endeavored to ascertain the meaning of this section in Richardson v. Williamson, 24 Cal. 301. It was there held that section 6 alone applied to actions for the recovery of land, and section 7 to personal actions depending upon title to land, and this decision has been followed in other cases; also, that the proviso relating to Spanish titles appended to each of the sections 6 and 7 in 1855, related to the same subject matter respectively provided for it in the body of the respective sections to which they were appended. By the act of April 18, 1863, it was manifestly the design to restore sections 6 and 7 to their original condition by omitting the provisos appended in 1855, leaving actions depending upon different sources of title thereafter to stand upon the same footing. But in order not to extend the time in those cases, where the statute had already commenced to run, or give a less time to those claiming under Spanish titles than to those claiming under other titles, after the change in the policy of the law, section 6 of

the amendatory act was adopted. And in this section, instead of making separate provisions for the provisos to sections 6 and 7 of the former act, an attempt, though apparently not a very successful one, was made to cover them both by a single provision; and the word "defense" in this provision was designed to apply to the same cases, only as the same word used in section 7, and its proviso as it before stood. Bissell v. Henshaw [Case No. 1,447]. For the construction put upon section 7 in the former acts, by the state courts, see Richardson v. Williamson, supra, wherein it was held that it did not relate to actions for the recovery of land.

The word "defense," as used in section 6 of the act of 1863, now under consideration, might cover one other case, but it is doubtful whether it was in the minds of the legislators when it was drafted. Suppose the defendants had not entered and ejected plaintiff on May 8, 1867, or afterward, and the latter had continued in the adverse possession of the premises until more than five years after final confirmation of the defendant's title, so that a title had vested in plaintiff beyond all question, by virtue of such adverse possession, and the plaintiff being in possession and desirous of having some record recognition of the fact, had brought his action against the defendant out of possession, claiming under his Spanish title, to determine his adverse claim in pursuance of section 254 of the state practice act. In that case, the defense to the action to determine and quiet the title acquired by adverse possession would rest upon the Spanish title, and that defense might be embraced by the term as used in the act, if the defense referred to, and not the action mentioned, is to be construed as founded on the title. But whether right or wrong as to these suggestions relating to the construction of the clause in question, I am satisfied that it was never intended to prevent a party in possession under a valid title not barred before entry under his title from setting up that title as a defense in an action brought against him to recover the possession. The defendant is in no default. He entered into possession under his title before it was barred, and while it was a subsisting valid title, and he has been in ever since. He had no occasion to bring an action to recover a possession which he already had. He could not have maintained it if he had. He was not bound to bring an action against the plaintiff to quiet his title, for the plaintiff had no shadow of title against him. His possession and title were united in himself. Besides, if he was satisfied with his possession under title, there was no duty cast upon him, by law or otherwise, to bring an action against persons out of possession to determine any claim they might set up. Plaintiff had simply been a naked trespasser on defendant, upon whom the latter had re-entered under his title. There was nothing more for defendant to do,

and he has in no respect been negligent or dilatory. He certainly could not lose his title by quietly possessing and occupying his own, in accordance with such title. He could not be required to bring an action when he had no longer any cause for complaint.

There must be judgment for defendants, with costs.

[This judgment was affirmed by the supreme court, where it was carried on writ of error. 98 U. S. 1.]